## ESTATE OF JAMES M. SCHOONMAKER, JR., DECEASED, THE UNION TRUST COMPANY OF PITTSBURGH, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5695.   Promulgated March 8, 1946.

*Norman D. Keller, Esq.*, for the petitioner.
*Homer F. Benson, Esq.*, for the respondent.

### OPINION.

SMITH, *Judge*: The respondent has determined a deficiency of $138,771.69 in the estate tax of the estate of James M. Schoonmaker, Jr., deceased. The principal question in issue is whether the estate is entitled to deduct as a charitable bequest the value of the remainder of a trust estate, the income from which is to go to certain named charities after the death of decedent's widow, who is a life beneficiary with the right to invade the trust principal under certain circumstances.

Other minor issues raised in the pleadings have been settled by stipulation.

Most of the facts are set out in a written stipulation of facts, with exhibits attached, which we incorporate in our findings of fact. The essential facts are as follows:

The decedent, James M. Schoonmaker, Jr., died December 1, 1941, a resident of Aleppo Township, Allegheny County, Pennsylvania. An estate tax return was filed by his executor, the Union Trust Co. of Pittsburgh, with the collector of internal revenue for the twenty-third district of Pennsylvania, at Pittsburgh.

Prior to his death, and on December 21, 1938, the decedent created a trust, transferring to the Union Trust Co. of Pittsburgh, as trustee, certain stocks and bonds which had a value at the date of his death of $888,295.82. The trustee was directed to pay the trust income to the grantor for life and after his death to his wife for life and after her death to certain named charities. The trustee was authorized, in its discretion, to pay the beneficiaries as much of the principal of the trust fund as might be needed for their proper maintenance, sup-

port, and well-being. The material provisions of the trust agreement read as follows:

### ARTICLE ONE.

The Trustee shall take, receive, hold, manage, sell, exchange, invest and reinvest the same and every part thereof, and shall pay, assign, transfer and deliver the principal in the manner hereinafter specified, and shall collect, recover and receive the interest, dividends, rents and other income thereof, hereinafter called "Income", and shall hold, pay, apply and dispose of the Income from time to time in the following manner:

(a) To the payment of the compensation of the Trustee based upon Income, and the proper and necessary expenses incurred in the administration of the Trust Estate.

(b) To pay over the entire balance of the Income of the Trust Estate from time to time to or for the benefit of the Donor, or in accordance with his written instructions, for and during the term of his natural life.

(c) From and after the death of the Donor to pay to or for the benefit of LUCY K. SCHOONMAKER, wife of the Donor, or in accordance with her written instructions, all of the net Income from the Trust Estate, for and during the term of her natural life.

(d) From and after the death of the said Lucy K. Schoonmaker, wife of the Donor, or from and after the death of the Donor should the said Lucy K. Schoonmaker not survive the Donor, the Trustee shall pay over the net Income annually to such of the charitable, religious or educational organizations or institutions as are listed in the schedule attached hereto and marked Exhibit "B" and in such proportions as the Executive Committee of the Board of Directors of The Union Trust Company of Pittsburgh shall annually determine.

### ARTICLE TWO.

In the event that any payment of Income hereinabove authorized to be made to either James M. Schoonmaker, Jr., the Donor, or to Lucy K. Schoonmaker, wife of the Donor, shall be insufficient in the opinion of the Trustee to defray the expenses of any illness, accident or other emergency or to provide for the proper maintenance, support, comfort and well-being of such beneficiaries, or either of them, the Trustee in its discretion is authorized to use from time to time so much of the principal of the Trust Estate as may be necessary to defray the expenses of any illness, accident, or other emergency or to provide for the proper maintenance, support, comfort and well-being of such beneficiaries, or either of them.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

### ARTICLE FOUR.

Neither the principal, nor the Income arising from this trust, or any part thereof, shall or may at any time be liable or subject in any manner whatsoever to the control, engagements, debts or liabilities of the said Lucy K. Schoonmaker; nor shall the principal or Income of the Trust Estate be liable to attachment by garnishment proceedings or other legal process; nor shall any assignment or order, either of principal or Income, given by the said Lucy K. Schoonmaker be valid; but the principal and Income payable to the said Lucy K. Schoonmaker shall be paid by the Trustee direct to or for her use, without regard to any

assignment, order, attachment or claim whatever. Every such attempted assignment or other disposition by the said Lucy K. Schoonmaker shall be not merely voidable but absolutely void, the intent and purpose of this Indenture being to provide a fund which shall under all circumstances during the life of the said Lucy K. Schoonmaker be available for her support and maintenance.

\*        \*        \*        \*        \*        \*        \*

### ARTICLE TEN.

\* \* \* If the Trust Estate or any part thereof or interest therein shall be properly included in the estate of the Donor for the purpose of any inheritance, estate or succession tax, the Trustee shall pay every such tax, except that no greater portion thereof shall be so paid by the Trustee than the proportion which the Trust Estate or such part thereof or interest therein shall bear to the total estate subject to such tax. However, the Trustee is directed, in the event that the personal estate of the Donor, or the personal estate of his wife, shall be insufficient to pay in full the inheritance, estate or succession taxes which may be properly due from their respective estates, to pay such deficiency or deficiencies from this Trust Estate. All payments made by the Trustee under the provisions of this Article shall be charged by the Trustee against principal or Income of the Trust Estate or both, as the Trustee shall determine.

On the same date that the decedent created the above described trust, December 21, 1938, his wife transferred to the Union Trust Co. of Pittsburgh, as trustee, from her own estate stocks and bonds having a value at the date of decedent's death of approximately $1,120,000. Such stocks and bonds constituted substantially all of the property owned by her at the time the trust was created. The net income of the trust was to be paid to the grantor for life and after her death an annuity of $60,000 was to be paid to her husband, if he should survive her, during his life. If her husband should not survive her, there was to be paid to the grantor's mother, if she should survive the grantor, as much of the trust income as might be needed to meet her "normal requirements" during her lifetime. Thereafter the entire income of the trust was to be paid to certain named charities.

The grantors of both trusts reserved the right to alter, amend, or revoke their respective trusts. The decedent never exercised that right. His wife, however, on January 7, 1942, did amend her trust to provide that after her death the residue of the trust fund should be paid over to her executors for disposition in accordance with the provisions of her will.

On January 14, 1943, decedent's wife executed a "Disclaimer" in which she irrevocably relinquished all of her rights under article two of the trust agreement executed by decedent to any payments out of the principal of the trust. On March 13, 1944, she executed a "Supplemental Disclaimer" relinquishing all of her rights under article ten of the trust agreement to have the trustee pay any inheritance, estate, or succession taxes which might be due from her estate. Both

of these disclaimers were agreed to by the trustee and recorded in the office of the clerk of the Orphans' Court of Allegheny County, Pa. The amended disclaimer of March 13, 1944, reads in part as follows:

WHEREAS, it is my purpose and intention by the execution of this instrument to release, relinquish, surrender and totally extinguish any right which I or my personal representatives after my death may have under any circumstances, or at any time, to have the Trustee pay all or any part of the inheritance, estate or succession taxes which may be properly due from my estate, or to use any part of the corpus of said Trust for my benefit in any manner whatsoever, so that whatever interest, right or power which I, or my personal representatives after my death, may have under any circumstances, or at any time, under any of the provisions of said Deed of Trust, shall fall into and become part of the residuary transfer to charitable, religious, or educational organizations or institutions specified in said Deed of Trust, all as provided by Section 812 (d) of the Internal Revenue Code as amended by Section 511 of the Revenue Act of 1944;

Now, THEREFORE, THESE PRESENTS WITNESSETH: That I, LUCY K. SCHOONMAKER, do hereby irrevocably and forever renounce, relinquish, release and surrender absolutely any and all right which I now have, or could, or might hereafter have, or acquire, or which my personal representatives after my death might have or could acquire, under Article Ten of the Deed of Trust created by James M. Schoonmaker, Jr., on December 21, 1938, or under any other terms or provisions of said Deed of Trust, or otherwise howsoever, to have The Union Trust Company of Pittsburgh, Trustee named therein, apply any part of the principal of the trust estate to the payment of all or any part of the inheritance, estate or succession taxes which may be properly due from my estate, whether passing under my will or not, or to use any part of the corpus of said Trust for my benefit or for the benefit of my estate, or for the benefit of the legatees or devisees named in my Last Will and Testament, or for the benefit of any donee of any gift which I have heretofore made or hereafter might make, whether in trust or otherwise, in any manner whatsoever.

The gross income and the distributable net income of each of the above described trusts for the years 1939 to 1944, inclusive, were as follows:

| Year | James M. Schoonmaker, Jr., trust | | Lucy K. Schoonmaker trust | |
|---|---|---|---|---|
| | Gross income | Distributable net income | Gross income | Distributable net income |
| 1939 | $60,896.92 | $54,008.51 | $53,878.23 | $43,566.25 |
| 1940 | 58,855.83 | 46,902.13 | 50,435.73 | 41,481.23 |
| 1941 | 57,133.61 | 43,633.21 | 48,711.49 | 37,020.25 |
| 1942 | 51,370.22 | | 40,102.26 | *68,690.50 |
| 1943 | 23,178.30 | | 39,407.66 | *26,854.50 |
| 1944 | 27,523.31 | | 40,824.98 | *44,922.22 |

*The stipulation shows only the combined distributable net income of the two trusts after 1941.

There was never any distribution made to either decedent or his wife out of the principal of either of the above trusts.

At the date of decedent's death his wife was 49 years of age. She has never remarried. She makes her permanent home in Aleppo

Township, Allegheny County, Pennsylvania, in the residence which was formerly owned by her and the decedent as tenants by the entirety. Each year since decedent's death she has spent approximately three months of the winter in Florida. In 1944 and 1945 she rented a residence at Palm Beach, Florida, at a cost of $3,000 per year. In the other years she occupied, rent-free, a residence owned by her brother at Palm Beach. She has spent one month of each of the summers since her husband's death in Cobourg, Canada, at a residence which she previously acquired as a gift from her mother.

In determining the deductibility for estate tax purposes of the charitable bequests such as the one now under consideration, there are two decisions of the Supreme Court which stand as guideposts; they are *Ithaca Trust Co.* v. *United States*, 279 U. S. 151, and *Merchants Nat. Bank of Boston* v. *Commissioner*, 320 U. S. 256. In the *Ithaca Trust Co.* case the gift of the remainder of a trust estate to charity was held deductible although the life beneficiary, testator's wife, could withdraw from principal any amount "that may be necessary to suitably maintain her in as much comfort as she now enjoys." The income of the trust estate was deemed to be more than sufficient to maintain the wife as required. In the *Merchants Nat. Bank of Boston* case, where there was a gift to charity of the remainder of a trust fund, the principal of which was subject to invasion at the discretion of the trustee if additional funds were required "for the comfort, support, maintenance, and/or happiness of my said wife," and the trustee was directed to exercise its discretion "with liberality" towards the wife, the Court held, distinguishing the *Ithaca Trust Co.* case, that the bequest to charity was too indefinite and uncertain to be deductible under the statute.

The test applied by the Court in those cases is whether the extent of the invasion of the trust principal, and therefore the amount of the remainder bequest to charity, can be measured by a "standard * * * fixed in fact and capable of being stated in definite terms of money."

In *Hartford-Connecticut Trust Co.* v. *Eaton* (C. C. A., 2d Cir.), 36 Fed. (2d) 710, where the testamentary trustee was given the power to pay over to the life beneficiary, testator's wife, as much of the trust corpus, which was to go to charity after her death, as it might deem "necessary or advisable for her comfortable maintenance and support," and the income was deemed sufficient to maintain the widow according to her accustomed standard of living, the *Ithaca Trust Co.* case was said to control and the deduction was allowed. The same rule was applied by the Circuit Court of Appeals for the Ninth Circuit in *Commissioner* v. *Bank of America Nat. Trust & Savings Assn.*, 133 Fed.

(2d) 753, where the testator's sister was to receive an annuity of $250 per month and was entitled to receive from the principal such additional amounts "as in the judgment of said trustee may be necessary and reasonable under the existing conditions" in case she should, by reason of accident, illness, or other unusual circumstances require them. The *Ithaca Trust Co.* case was also followed in *Commissioner* v. *Wells Fargo Bank & Union Trust Co.*, 145 Fed. (2d) 130, where the testatrix' niece was given a life estate with the right to so much of the principal as the trustees might deem reasonable "on account of any sickness, accident, want or other emergency."

*Estate of Horace G. Wetherill*, 4 T. C. 678; appeal dismissed, 150 Fed. (2d) 1019, involved a gift to the Board of Regents of the University of Colorado after a life estate in testator's wife, subject to the right of the wife to any part, or all, of the principal for her "care, maintenance, and support" and for extraordinary expenses beyond her own means, caused by her injury, illness, or disability. We held that the bequest was deductible and within the rule of the *Ithaca Trust Co.* case, rejecting the Commissioner's contention that *Merchants Nat. Bank of Boston* v. *Commissioner*, *supra*, controlled. See also *Estate of Edwin E. Jack*, 6 T. C. 241.

*Gammons* v. *Hassett*, 121 Fed. (2d) 229; certiorari denied, 314 U. S. 673, although previously decided, is in line with the *Merchants Nat. Bank of Boston* case. There the life beneficiary, testator's wife, was to be paid so much of the principal "as my said wife may at any time and from time to time need or desire." The court observed that:

* * * When the testator gave his wife the power to invade the principal as she "may * * * desire," he meant what he said. He intended to give her a broad power of invasion of the principal, not restricted to a mere use of the corpus for the purpose of satisfying her needs.

* * * * * * *

* * * We know of no standard fixed in fact by which we could measure either the extent of the life tenant's desires or the likelihood of an exercise of those desires, so that we could place a definite value on the charitable bequests. * * *

In *Industrial Trust Co.* v. *Commissioner* (C. C. A., 1st Cir.), 151 Fed. (2d) 592, the testator left his residuary estate in trust with annuities of $12,000 to his wife and $6,000 each to his mother and sister to be paid out of the income. The remainder of the trust fund was to go to other individuals and certain charities. The trustees were directed, however, in their sole discretion, to pay over to the testator's wife, in addition to the fixed income, so much of the net income of the trust, or if that be insufficient, so much of the principal, as the trustees other than the widow deemed proper for the "comfort and pleasure" of the widow. It was held that the bequest to charity was

too indefinite and uncertain for deduction, following *Merchants Nat. Bank of Boston* v. *Commissioner, supra.* The court said:

\* \* \* We believe the term "pleasure" in the case at bar is at least no narrower than the term "happiness" and where, as here, the power of invasion exists, to such a speculative degree, the value of the gifts to charity is not sufficiently definite to be deductible.

The court also pointed out that there was a factual distinction between that case and *Commissioner* v. *Wells Fargo Bank & Union Trust Co.,. supra*, and *Commissioner* v. *Robertson's Estate*, 141 Fed. (2d) 855.

In *Estate of John W. Holmes*, 5 T. C. 1289, where the principal could be invaded "to properly care for and maintain" decedent's niece, and in *Estate of Nathan P. Cutler, Jr.*, 5 T. C. 1304, where the principal could be invaded for the "use and benefit" of the life beneficiary, the charitable bequests were held not deductible. The words "use and benefit" in the *Cutler* case were thought to be broader in scope than the words "comfort, maintenance, and support."

The principal of the trust estate here was not subject to invasion at the mere "pleasure" of the wife or for the purpose of providing for her "happiness." It could be invaded only if the income of the trust was found to be "insufficient in the opinion of the Trustee to defray the expenses of any illness, accident or other emergency or to provide for the proper maintenance, support, comfort and well-being" of the beneficiaries. In article four of the trust agreement the decedent declared that it was "the intent and purpose of this Indenture \* \* \* to provide a fund which shall under all circumstances during the life of the said Lucy K. Schoonmaker be available *for her support and maintenance.*" (Italics supplied.) We do not think that the decedent intended that any broader meaning should be given to the words "proper maintenance, support, comfort and well-being" used in article two than to the words "for her support and maintenance" used in article four. Nor do we find anything to indicate that such maintenance and support was to extend beyond that to which the wife was accustomed. Cf. *Hartford-Connecticut Trust Co.* v. *Eaton, supra.* While it is true that the wife's customary standard of living is high, as befits a person of her large wealth, the income which she has from both of the trusts is still ample for all of her needs and for any likely contingencies. She recognized this in executing her disclaimers of any right to the principal of the decedent's trust.

In view of all of these facts we think that the charitable bequest was sufficiently definite and certain to come within the statute.

There is a further consideration which it seems to us would impel the conclusion we have reached; that is, the effect of the disclaimers which the wife executed pursuant to section 812 (d), Internal Revenue Code, as amended by section 408 of the Revenue Act of 1942 and section 511 of the Revenue Act of 1943, to any rights in the principal of the

trust fund. That section of the code as so amended includes in the allowable deductions:

> \* \* \* (\* \* \* the interest which falls into any such bequest, legacy, devise, or transfer as a result of an irrevocable disclaimer of a bequest, legacy, devise, transfer, or power, if the disclaimer is made prior to the date prescribed for the filing of the estate tax return or, in the case of a decedent dying on or before October 21, 1942, if the disclaimer is made prior to September 1, 1944), \* \* \*

The respondent's contention with respect to the disclaimers is that they were void and ineffective because the trust was a "spendthrift" trust and under the laws of the Commonwealth of Pennsylvania the wife could not legally disclaim any of her rights under the trust agreement. Article four of the trust agreement, set out in full above, prohibits the wife from making any "assignment or other disposition" of either income or principal of the trust. The respondent argues, therefore, that the disclaimers are void, citing *In re Harrison Estate*, 185 Atl. 766, and other cases.

The answer to respondent's argument is that in executing the disclaimers the wife did not undertake to assign or dispose of the principal of the trust. She merely gave up her right to any claim for payments out of the principal. The trust was nevertheless to continue for her sole benefit during her lifetime. While under the Pennsylvania cases cited by the respondent the wife may not have been at liberty to terminate the trust or to dispose of any interest which she had in the trust, it does not follow that she did not have the right lawfully to give up or disclaim her rights to invade the trust principal. The respondent does not cite any case that so holds. There is no requirement in the taxing statute, section 812 (d), Internal Revenue Code, as amended, that the disclaimer must itself have effected a transfer of the interest to the charity. The deduction allowable is of any interest "which falls into any such bequest, \* \* \* as a result of an irrevocable disclaimer." If, as respondent contends, the remainder of the trust here after the wife's life estate was prevented from vesting in the charities at the date of decedent's death solely by reason of the wife's right to invade the principal, then it must have fallen into the bequest as a result of the disclaimer of that right.

Furthermore, as petitioner points out in its brief, there has been an amendment to the statutory law of the Commonwealth of Pennsylvania (Pennsylvania Act of June 1, 1945, No. 431) which expressly permits the beneficiary of a spendthrift trust to release or disclaim any interest therein in favor of a remainderman. The amendment is made applicable to "releases and disclaimers heretofore and hereafter delivered [to the trustee]."

We think that the respondent erred in disallowing the value of the remainder of the trust as a charitable bequest.

*Decision will be entered under Rule 50.*