ESTATE OF EUNICE M. GREENE, CITY BANK FARMERS TRUST COMPANY, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 16850. Promulgated August 25, 1948.

*Thomas W. Constable, Esq.*, for the petitioner.
*Sheldon V. Ekman, Esq.*, for the respondent.

### OPINION.

KERN, *Judge*: The respondent determined a deficiency in estate tax in the sum of $14,533.18. The issue presented in this proceeding is whether respondent erred in disallowing a deduction from the gross estate taken by petitioner under section 812 (d) of the Internal Revenue Code on account of a bequest in the decedent's will to the Home for Aged Men and Aged Couples of Providence, Rhode Island. Respondent disallowed this deduction for the reason that "the amount, if any, ultimately passing to the organization is not ascertainable."

The parties have filed herein a stipulation of facts and we find the facts to be as stipulated. The stipulation is incorporated herein by reference. It may be summarized as follows:

The decedent died on June 27, 1945, and the estate tax return was filed on behalf of her estate with the collector of internal revenue for the first district of New York.

Subdivisions 9 and 10 of paragraph fifth of decedent's will provide as follows:

(9) to the CITY BANK FARMERS TRUST COMPANY seventeen ninety-fifths thereof, in trust, nevertheless, with full power to invest, reinvest and keep the same invested and to pay over the income thereof quarterly to LAURA A. WASHBURN, of Providence, Rhode Island, so long as she shall live, and after her death the income quarterly to HELEN M. CHASE of Jamaica, Vermont, so long as she shall live, and after her death to pay the remaining income and the principal of which she had been receiving the income to the HOME FOR AGED MEN AND AGED COUPLES of Providence, Rhode Island, for the corporate purposes of said corporation. If in any calendar year the income so paid over shall not equal One thousand 00/100 ($1,000.) Dollars, then in such case I direct said trustee to make up the deficiency for such year out of the capital so bequeathed to it in trust, and in the discretion of said trustee an additional amount from capital for medical or hospital expenses;

(10) to the CITY BANK FARMERS TRUST COMPANY seventeen ninety-fifths thereof, in trust, nevertheless, with full power to invest, reinvest and keep the same invested and to pay over the income thereof quarterly to HELEN M. CHASE of Jamaica, Vermont, so long as she shall live, and after her death the income quarterly to LAURA A. WASHBURN of Providence, Rhode Island, so long as she shall live, and after her death to pay the remaining income and the principal of which she had been receiving the income to the HOME FOR AGED MEN AND AGED COUPLES, of Providence, Rhode Island, for the corporate purposes of said corporation. If in any calendar year the income so paid over shall not equal One thousand 00/100 ($1,000.) Dollars, then in such case I direct said trustee to make up the deficiency for such year out of the capital so bequeathed to it in trust, and in the discretion of said trustee an additional amount from capital for medical or hospital expenses.

Laura A. Washburn and Helen M. Chase (hereinafter referred to as the life beneficiaries) were, respectively, 76 years and 8 months old and 73 years and 7 months old at the time of the decedent's death. Their life expectancies, according to the American Experience Table of Mortality, were, respectively, 5.47 years and 6.68 years. The principal of each of the trusts created by the provisions of decedent's will above set forth amounted to $29,049.28.

During the years 1945, 1946, 1947, and 1948, payments of trust income and principal were made by the trustees to the life beneficiaries as follows:

*Trust for Laura A. Washburn*

| 1945 | Income | Principal |
|---|---|---|
| Paid 4/5/46 | $192. 08 | _____ |
| 1946 | | |
| Paid 4/5/46 | 47. 93 | _____ |
| 7/5/46 | 114. 03 | _____ |
| 10/4/46 | 169. 01 | _____ |
| 1/4/47 | 327. 95 | $341. 08 |
| Total | 658. 92 | 341. 08 |
| 1947 | | |
| Paid 4/4/47 | 147. 56 | _____ |
| 7/8/47 | 184. 70 | _____ |
| 10/6/47 | 156. 43 | _____ |
| 12/31/47 | 173. 24 | 338. 07 |
| Total | 661. 93 | 338. 07 |
| 1948 | | |
| Paid 4/5/48 | 174. 72 | _____ |

*Trust for Helen M. Chase*

| 1945 | Income | Principal |
|---|---|---|
| Paid 4/5/46 | $192. 08 | _____ |
| 1946 | | |
| Paid 4/5/46 | 47. 92 | _____ |
| 7/5/46 | 114. 02 | _____ |
| 10/4/46 | 169. 01 | _____ |
| 1/4/47 | 327. 95 | $341. 10 |
| Total | 658. 90 | 341. 10 |

Trust for Helen M. Chase—Continued

| 1947 | Income | Principal |
|---|---|---|
| Paid 4/4/47 | $147. 57 | |
| 7/8/47 | 184. 70 | |
| 10/6/47 | 156. 49 | |
| 12/31/47 | 173. 24 | $338. 00 |
| Total | 662. 00 | 338. 00 |
| 1948 | | |
| Paid 4/5/48 | 174. 72 | |

Pursuant to paragraph fourth of decedent's will, legacies in the amount of $7,411.57 were paid to each of the life beneficiaries.

On April 27, 1947, the life beneficiaries wrote a letter to counsel for petitioner reading as follows:

Mr. THOMAS CONSTABLE.

Dear Sir:

Your letter received also my sister came from Vermont the same day, so I could consult with her about your letter, and we both wish to cooperate with you by assuring you and the government, that there will not be any money taken from the capital for medical or hospital expenses as my sister is 75 years old and I am 78 years old, which of course means we may not live much longer and the money that Mrs. Greene left us in the Savings Bank and that you so kindly saw we had at once, will be the money we would use for hospitalization or medical aid. I have had pneumonia twice and Coronary Thrombosis once and sister Eunice paid my hospital bills and I suppose she felt that she still wanted to do it if I should be sick.

Of course the way living is, I can say we find the thousand a year not adequate for our living expenses as it is our only source of income, but we each own our own house which is something, and have to dip into the Savings Bank account. Sister and I both agreed some time ago at our age if something should befall us that an operation was needed, neither one of us would have one feeling it was a useless spending of money and that our time had come and we should go. I don't think it is right for the government to expect this and it should be exempt. It was Mr. Greene's idea and sister Eunice carried out his wishes as we are the last of our family. The Home for Aged Couples means nothing to us and if they got a few thousand after we went I would think that they were very lucky.

Hoping I have covered everything and that you can fix it with the Government, I am,

Yours sincerely,

Miss LAURA A. WASHBURN
(MRS.) HELEN M. CHASE

The payments of trust income made by the trustee to the life beneficiaries in 1946 and 1947 represented all of the income of the trust for those years.

On November 14, 1947, the sum of $15,528.01 was paid, representing the full deficiency of $14,533.18 in tax, together with interest to date of such payment.

If the sum of $15,528.01 (representing the deficiency and interest paid) is refunded, each trust will be increased by the amount of

$2,778.70, and the increase would be reduced pro rata on any partial refund.

The ultimate question in cases such as the one before us is whether the remainder interests bequeathed by a decedent to charities, and allowable as deductions from the gross estate under section 812 (d) of the Internal Revenue Code, have an ascertainable value in that the possibility and the extent of a diversion of the principal of the bequest from the charitable remainderman to a noncharitable life tenant can be measured with reasonable accuracy.

If a decedent, by his will, sets up a standard by which the rights of the life tenant can be fixed "in definite terms of money," and under such a standard it appears, with reasonable certainty, that no invasion of the principal bequeathed to a charitable remainderman will be necessary, then the value of the remainder interest is ascertainable at the date of decedent's death and, therefore, may be deducted. *Ithaca Trust Co.* v. *United States*, 279, U. S. 151. In that case the Supreme Court, in considering a bequest in trust of which the widow was life beneficiary and a charity was the remainderman, and which provided that the trustees could invade the principal in order to maintain the widow "in as much comfort as she now enjoys," made the following statement:

* * * The principal that could be used [for the widow] was only so much as might be necessary to continue the comfort then enjoyed. The standard was fixed in fact and capable of being stated in definite terms of money. It was not left to the widow's discretion. *The income of the estate at the death of the testator and even after debts and specific legacies had been paid was more than sufficient to maintain the widow as required. There was no uncertainty appreciably greater than the general uncertainty that attends human affairs.* [Emphasis supplied.]

In the cases following the *Ithaca Trust Co.* case, the usual factual background is that the decedent, by will, has fixed a standard with regard to expenditures for the life beneficiary which limits the power of the trustees to invade principal for the life beneficiary's support and maintenance, and the income available for the life beneficiary is comfortably in excess of the money necessary to maintain that standard. See *Estate of Edwin E. Jack*, 6 T. C. 241, and cases cited.

Where no standard is fixed limiting the power of the trustees to invade principal for the life beneficiary, the value of the remainder to charities can not be ascertained, regardless of the income available for the life beneficiary, and, therefore, the value of the remainder may not be deducted under section 812 (d). *Merchants National Bank of Boston* v. *Commissioner*, 320 U. S. 256. In such a case it can not be said that the possibility of the invasion of principal to the detriment of the residual bequest to charity is so remote as to be negligible.

In the instant case we assume, *arguendo*, that the power of the trus-

tee to invade principal was limited by standards fixed in decedent's will which were "capable of being stated in definite terms of money," and that the trustee could invade principal only to the extent necessary to pay the life beneficiary $1,000 a year and to pay the beneficiary's reasonable medical and hospital expenses. However, we can not take the second step required to invoke the doctrine of the *Ithaca Trust Co.* case. We can not say that the likelihood of the exercise of that power, even thus limited, is so remote as to be negligible and, therefore, may be disregarded in valuing the remainder interests of the charities.

The facts here show not merely a possible invasion of principal for the use of the life beneficiaries, but an actual invasion of principal during each of the two full years covered by the stipulation, and, therefore, that the invasion of principal will probably continue. See *John and Pauline Tonningsen Trust*, 43 B. T. A. 37, 43. The factors entering into a calculation of the total amount of such invasion to be anticipated are as follows: (1) The length of life of the life beneficiaries, (2) the annual income of the trusts, (3) the medical and hospital expenses which the trustee, in its discretion, might pay on behalf of the life beneficiaries, and (4) the independent means of the life beneficiaries available for the payment of such expenses. Factor (1) might be determined by the use of actuarial expectancies; but factors (2) and (3) are unknown and unknowable. The statements made in the letter of the life beneficiaries above set forth are, obviously, not binding upon the trustee, and can not limit the power of the trustee to provide for the medical and hospital expenses of the two sick old ladies for whose life benefit the trusts were established. As to factor (4), the stipulation indicates that the life beneficiaries had little beyond the bare necessities of living.

"* * * In dealing with a claim for a deduction from gross estate, determination of the value of a charitable bequest * * * must be measured as of the date of decedent's death." *Estate of Charles H. Wiggin*, 3 T. C. 464, 466. In the instant case we are unable, for the reasons given, to value the remainder interests bequeathed to charity by the decedent, and, therefore, we agree with respondent that no deduction on account thereof may be taken by decedent's estate.

*Decision will be entered under Rule 50.*