ESTATE OF ANNA FINLEY KENNY, FRANKLIN A. KENNY, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 15462. Promulgated November 29, 1948.

858

*Andrew Koerner, Esq.*, and *Frank H. Spears, Esq.*, for the petitioner.

*Robert G. Harless, Esq.*, for the respondent.

860

**OPINION.**

JOHNSON, *Judge*: For the computation of estate tax, section 812 (d) of the Internal Revenue Code permits the deduction from gross estate of the amount of all bequests to charities, as therein defined, and the parties are agreed that the 10 designated remainder beneficiaries are charities within the statutory definition. But respondent disallowed the deduction claimed on account of the bequests to these

charities, and he defends that determination on the ground that no reasonably accurate computation of the value or amount could be made at the time of decedent's death, since the trustee was authorized to use part or all of the trust principal, from which they were to be paid, in providing for the "comfort and support" of decedent's husband in case he should require it.

It is well settled that no deduction may be taken on account of a remainder bequest to charity unless at the testator's death it is possible to make:

* * * a highly reliable appraisal of the amount the charity will receive * * *. Only where the conditions on which the extent of invasion of the corpus depends are fixed by reference to some readily ascertainable and reliably predictable facts do the amount which will be diverted from the charity and the present value of the bequest become adequately measurable. * * * [*Merchants Nat. Bank of Boston* v. *Commissioner*, 320 U. S. 256.]

And in many cases the absence of reliably predictable facts has led to judicial approval of the Commissioner's disallowance of a claimed deduction. *De Castro's Estate* v. *Commissioner* (C. C. A., 2d Cir.), 155 Fed. (2d) 254; *Industrial Trust Co.* v. *Commissioner* (C. C. A., 1st Cir.), 151 Fed. (2d) 592; certiorari denied, 327 U. S. 788; *Estate of Eunice M. Greene*, 11 T. C. 205; *Estate of Bayard H. Christy*, 8 T. C. 862; *Estate of John W. Holmes*, 5 T. C. 1289.

But petitioner contends that the cited cases are not here applicable because the trustee's power to invade corpus could be exercised only if the trust income, together with the life beneficiary's income from other sources, should be inadequate for the beneficiary's "comfort and support," and since the husband's customary expenditures for years preceding decedent's death were considerably less than his aggregate income from all sources, the probability of an invasion of corpus was so remote as to be negligible. It has been held that remote possibilities of corpus invasion do not render the amount of a remainder bequest to a charity impossible of calculation, and petitioner relies strongly on *Ithaca Trust Co.* v. *United States*, 279 U. S. 151, wherein the Supreme Court considered the excess of a trust's income over the support requirements of the life beneficiary and, in holding the possibility of corpus invasion too unlikely to defeat a reasonable valuation of the remainder bequest, said * * * "There was no uncertainty appreciably greater than the general uncertainty that attends human affairs."

The will here provides that the trust income be paid to the beneficiary husband during life and that so much of principal be paid him " * * * as, in a liberally exercised judgment, shall be required from time to time for the comfort and support of my said husband for his lifetime." We are of opinion that this language restricts the trustee from making payments out of corpus to the life

beneficiary unless the latter's income should be inadequate for his habitual comfort and support. Similar words were so construed in *Union Planters Nat. Bank* v. *Henslee* (C. C. A., 6th Cir.), 166 Fed. (2d) 993; *Hartford-Connecticut Trust Co.* v. *Eaton* (C. C. A., 2d Cir.), 36 Fed. (2d) 710; *Estate of Nellie H. Jennings*, 10 T. C. 323; *Estate of Lucius H. Elmer*, 6 T. C. 944; *Estate of James M. Schoonmaker, Jr.*, 6 T. C. 404; and *Estate of Edwin E. Jack*, 6 T. C. 241, and even the trustee's power to invade corpus if necessary to cover expenses of a life beneficiary's illness or accident has been held not to make valuation of the remainderman's interest too uncertain for calculation where the life beneficiary's income greatly exceeded the requirements for his support. *Commissioner* v. *Wells Fargo Bank & Union Trust Co.* (C. C. A., 9th Cir.), 145 Fed. (2d) 130; *Commissioner* v. *Bank of America Nat. Trust & Savings Assn.* (C. C. A., 9th Cir.), 133 Fed. (2d) 753.

A contrary conclusion has been reached, however, where the trustee was authorized to invade corpus not only for support, but also for the life beneficiary's happiness, *Merchants Nat. Bank of Boston* v. *Commissioner, supra;* pleasure, *Industrial Trust Co.* v. *Commissioner, supra;* use and benefit, *Estate of Nathan P. Cutler, Jr.*, 5 T. C. 1304; unforseen emergency needs, *De Castro's Estate* v. *Commissioner, supra*, or as the beneficiary should desire, *Gammons* v. *Hassett* (C. C. A., 1st Cir.), 121 Fed. (2d) 229. See discussion in *Estate of Horace G. Wetherill*, 4 T. C. 678. And respondent contends that under decedent's will the husband here could in fact have forced the trustee to pay him indefinite amounts out of corpus. He argues, first, that the husband could remove and replace the trustee and could disapprove the trustee's investments. The contention, if we understand it, is that the husband was in a position to misuse his powers by exerting undue pressure on the trustee for his own benefit. In deciding tax incidence, we shall not assume irregularities either by him or by a trustee. The second argument is that the trustee was under a duty to pay the husband an amount sufficient for comfort and support, regardless of the husband's income from other sources; that, as the trust income of between $4,000 and $5,000 annually was not equal to the husband's habitual living expenses, which reached about $6,000, the trustee could be required to provide the deficit from corpus; and, furthermore, that the husband's gifts in 1945 and 1946 illustrate a means whereby he could render himself entirely dependent on the trust for comfort and support.

The husband has not in fact rendered himself wholly dependent on the testamentary trust, and no trust corpus has ever been paid to him or requested by him. But we should be impressed by respondent's argument if the husband were in a position to exact indeterminate amounts of corpus either by express provisions of the will, cf. *De Castro's Estate* v. *Commissioner, supra*, or, failing these, under the

interpretation given by Oregon courts to trust instruments in which the grantor's intention on this point is not clear. Cf. *Estate of Bayard H. Christy, supra.* The parties admit inability to cite a pertinent Oregon decision, nor have we found any, but each contends that his view represents the weight of authority in other states. It is of some support to petitioner, we note in passing, that the Court of Appeals for the Ninth Circuit has twice adverted to the life beneficiary's independent income in holding an invasion of trust corpus too improbable to defeat a reasonable appraisal of the remainderman's bequest. *Commissioner* v. *Wells Fargo Bank & Union Trust Co., supra; Commissioner* v. *Bank of America Nat. Trust & Savings Assn., supra.*

We perceive no occasion, however, to speculate on the abstract question of whether or not an Oregon court would hold it proper for a trustee to ignore the individual income of a life beneficiary entitled to trust corpus for support if trust income should be inadequate therefor. Such a question arises only when there is no evidence from which the grantor's intent can be inferred. The decedent's intent here seems obvious. By the provisions of the *inter vivos* trust which she created in August 1944, she likewise directed that trust income be paid to her husband "for his comfort, maintenance and support." She could not have intended that each trust provide his sole support. And we conclude, therefore, that she did not intend for the trustee of the testamentary trust to ignore his income from other sources.

As for respondent's suggestion that the husband could deliberately impoverish himself by gifts and thus become solely dependent on the testamentary trust, it is sufficient to point out that he could not give away the corpus of the *inter vivos* trust, and, since the combined income of the two trusts substantially exceeded his habitual expenses, it is reasonable to assume that the corpus of the testamentary trust would not be invaded even if his earnings and separate property are left out of account. This is *a fortiori* true because of the husband's advanced age of 83 years, 7 months. We hold, therefore, that at the time of decedent's death a reasonably accurate computation of the value of remainder bequests to charity could be made, and, in accordance with the parties' stipulation, applicable in the event of such a decision, we find and hold that $64,519.75 is a proper deduction to be allowed in the computation of net estate.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

OPPER, *J.*, dissenting: The present result seems to me utterly irreconcilable with that in *Estate of Charles H. Wiggin*, 3 T. C. 464, even as that case is interpreted for purposes of distinction in *Estate of*

*Edwin E. Jack*, 6 T. C. 241, 246. See *Estate of Eunice M. Greene*, 11 T. C. 205. If the *Wiggin* case is erroneous, a due regard for reasonably definite and consistent rules for the guidance of taxpayers seems to me to require that it be explicitly overruled.

TURNER, *J.*, agrees with this dissent.