Estate of Joseph A. Schmitt, Deceased, The First National Bank of Portland, Executor v. Commissioner.
Estate of Schmitt v. Commissioner
Docket No. 46749.
United States Tax Court
T.C. Memo 1955-155; 1955 Tax Ct. Memo LEXIS 182; 14 T.C.M. (CCH) 579; T.C.M. (RIA) 55155; June 16, 1955
Frederick H. Torp, Esq., Yeon Building, Portland, Ore., for the petitioner. John D. Picco, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion The respondent has determined a deficiency of $18,397.23 in the petitioner's estate tax liability. The deficiency results from the disallowance by the respondent of a charitable deduction of $67,118.99 claimed in the estate tax return. The issue is whether provisions of a testamentary trust giving the trustee power to invade the principal of the trust estate if, in his judgment, the income of the trust proved insufficient to provide for the "proper maintenance and support, or other necessity" of the income beneficiary rendered the value of a charitable remainder so uncertain *183 and unascertainable as to preclude its deduction under Section 812(d) of the Internal Revenue Code of 1939. Findings of Fact A stipulation of facts filed by the parties is hereby adopted and incorporated herein by reference. [1]
The decedent, Joseph A. Schmitt, died testate on September 25, 1948. At the time of his death, he was a resident of Oregon, and a citizen of the United States. He was survived by two brothers and three sisters. Decedent's will was admitted to probate on October 13, 1948. The First National Bank of Portland, the petitioner herein, was appointed executor. Petitioner had also been named trustee under decedent's will and since August 21, 1950, has been acting as such trustee. The will created a trust for the benefit of decedent's brother, Louis E. Schmitt, for life. The trust was to terminate upon his death, and the unexpended corpus then divided equally between a designated charity and named relatives. The trust was set up on August 21, 1950, the *184 principal thereof consisting largely of stock in Schmitt Bros. Lumber Company and S.H. & W. Lumber Company, Oregon corporations. Decedent's will provided in part as follows: "SECOND: I hereby give, devise and bequeath all the rest, residue and remainder of my estate and property, real and personal of which I shall be possessed at the time of my death, to my Trustee, THE FIRST NATIONAL BANK OF PORTLAND, (OREGON), in trust, to pay and apply to the use of my brother, LOUIS E. SCHMITT, (Otherwise known as L. E. Schmitt), for and during the term of his life, the net income of my Trust Estate during his life, in such sums of money from time to time as he may require; and if at any time or times such net income shall in the judgment of my Trustee, prove insufficient to provide for his proper maintenance and support, or other necessity, it shall be lawful for my Trustee at its sole discretion to invade the capital of my Trust Estate, and pay or apply for the benefit of my said brother such portion thereof as my Trustee in its discretion my see fit; and I hereby appoint said Bank Executor of my Estate; "THIRD: During the lifetime of my said brother, however, it is my wish and desire that *185 he shall have control of the management and operation of SCHMITT BROS. LUMBER CO., an Oregon corporation, and the business and affairs of said Corporation, and the income and profits therefrom, if any; and that said Corporation shall continue in existence during his lifetime, unless the same shall be dissolved and terminated, and the affairs thereof wound up by mutual agreement of my brother and my said Executor. "FOURTH: At the death of my said brother, LOUIS E. SCHMITT, my Trustee shall divide the unexpended residue of my trust estate remaining undisposed of, as follows: "Fifty (50%) per cent thereof, or an undivided one-half thereof I do hereby devise and bequeath unto the Board of Trustees of and for crippled children at Portland, Oregon, organized, maintained, and operated by and under the jurisdiction and authority of the Imperial Council of the Ancient and Arabic Order of the Nobles of the Mystic Shrine, for the use and benefit of the hospital of said Order for Crippled Children, at Portland, Oregon; and the remaining fifty (50%) per cent or undivided one-half thereof I do hereby devise and bequeath unto my sisters and brother surviving me at the time of my death, and to *186 my nieces, MAUDE HOGUE and LORENA WEISS, in accordance with their relationship to me, and the laws of descent and distribution of the State of Oregon now in force." The Imperial Council of the Ancient and Arabic Order of the Nobles of the Mystic Shrine for North America for the use and benefit of the charitable hospital for crippled children at Portland, Oregon, sometimes known as the Shriners Hospital for Crippled Children, is a qualified charitable organization within the meaning of Section 812 (d) of the Internal Revenue Code of 1939. On December 13, 1949, petitioner filed a Federal estate tax return with the then collector of internal revenue, Portland, Oregon. The return disclosed a net estate for basic tax and a net estate for additional tax in the respective amounts of $17,510.41 and $57,510.41, and reported a total estate tax of $8,737.52. The estate tax return disclosed a gross estate of $199,841.71, as follows: Fair
Items
Market Value
Stock and Bonds
$177,634.03
549 shares Schmitt Bros. Lumber Co., par value $100/share
$135,279.09
249 shares S.H. & W. Lumber Co., par value $100/share
35,726.52
Savings bonds
6,628.42
$177,634.03
Mortgages, notes and cash
20,787.68
Miscellaneous (Auto & Personal effects)
1,420.00
$199,841.71
*187 The Schmitt Bros. Lumber Company stock was returned in the estate tax return at a total value of $135,279.09 or $246.41 per share. There were no sales of this stock near the date of decedent's death. In valuing the underlying assets, the appraisers for the estate appraised the assets at book value except for the following: Book
Appraised
Items
Value
Value
Timber and timberiands
$15,346.85
$53,195.52
Business Property
(Garage): Land
17,936.31
22,000.00
Building
11,441.25
25,840.00
Ranch Property
5,897.95
14,860.00
The S.H. & W. Lumber Company stock was returned in the estate tax return at a total value of $35,726.52 or $143.48 per share. There were no sales of this stock near the date of decedent's death. In valuing the underlying assets, the appraisers for the estate appraised the assets at book value except for the used operating equipment which was depreciated 42 per cent to reflect actual value. In schedule N of the estate tax return petitioner claimed a deduction of $67,118.99 for the remainder bequesthed to the Shriners Hospital for Crippled Children, as follows: Gross Estate
$199,841.71
Deductions
15,212.31
Net
$184,629.40
Less cash bequests
5,002.00
$179,627.40
Net income per year at 4%
$7,185.10
Life tenant age: 70
Present value of $1 for life at age 70
6,317.16
Value of life estate
45,389.42
Remainder
$134,237.98
One-half of remainder bequeathed under Will
to charity
67,118.99
*188 The Commissioner of Internal Revenue did not change the value of the gross estate, but disallowed the deduction of $67,118.99 for charitable remainder. At decedent's death, Louis E. Schmitt, principal beneficiary of the trust, was 69 years and 7 months of age, and his life expectancy was approximately 8.48 years. He was in frail health, and lived with his wife, Loretta M. Schmitt. They had no children or dependents. Mrs. Schmitt was 65 years old, a housewife, and not employed. The customary living and personal expenses of Louis E. Schmitt and his wife, Loretta M. Schmitt, for the years before and after decedent's death averaged $9,000 a year, an amount which has always exceeded the trust income. Under Oregon law the net income of a testamentary trust is the property of the life beneficiary from the date of the decedent's death and as such is distributable to him upon establishment of the trust. The total net income of the estate and testamentary trust for the period September 25, 1948 to September 1, 1954 amounted to $9,475.82. During portions of this period losses were sustained. Louis E. Schmitt's distributable share of the income of the trust for 1951 was $8,558.23, for *189 1952 $1,936.73, and for 1953 $4.38 and he reported these amounts in his income tax returns for those years. By agreement with Louis E. Schmitt, the amounts of $8,558.23 and $1,936.73 (excepting $83.45 which was distributed to him on December 31, 1951) were used by petitioner to pay the expenses of administering the estate, which, in the absence of agreement, would otherwise have been charged against the trust corpus. At decedent's death, Schmitt Bros. Lumber Company was an Oregon corporation, formed on March 13, 1930, with its principal activity for many years being the manufacture and sale of lumber. In addition, it owned a ranch at Selma, Oregon, devoted to the raising and selling of cattle, sheep and hogs. It also leased a garage building in Grants Pass, Oregon, to Hannum and Kelt Chevrolet Agency. This company discontinued its lumber business in 1946 with the sale of its sawmill and other mill equipment to S.H. & W. Lumber Company for a consideration of $100,000, payable pursuant to deferred payment contract. It continued to engage in transactions involving the purchase and sale of timber. In 1953, it sold its ranch properties and closed down its farming business. Schmitt *190 Bros. Lumber Company was operated by decedent and Louis E. Schmitt as President and Vice-President, respectively, for many years prior to decedent's death. Louis E. Schmitt continued to be active thereafter as president. The stockholders on September 25, 1948, were: Name
Shares
Joseph A. Schmitt (Decedent)
549
Louis E. Schmitt
549
O. L. Hogan
1
L. H. Weiss
1
Total outstanding
1,100
No dividends were paid by Schmitt Bros. Lumber Company during at least five years prior to decedent's death. The following is a summary of its balance sheet on December 31, 1948: Assets
Cash
$ 5,362.70
Other current assets
31,863.45
U.S. Government bonds
64,072.00
Contract receivable - sale of mill
40,000.00
Other investments
27,346.85
Garage and ranch property
(less depreciation)
22,434.68
Total Assets
$191,079.68
Liabilities
Current liabilities
$ 7,785.35
Unrealized profit - sale of mill
31,977.52
Net Worth
Capital stock
$110,000.00
Surplus
41,316.81
Total Liabilities and Net Worth
$191,079.68
A summary of the sales and net income of Schmitt Bros. Lumber Company and the Federal income and excess profits taxes paid for the *191 years 1943 to 1948, inclusive, is as follows: Year
Sales
Net income
Taxes
1943
$114,465.76
$ 9,531.36
$ 6,328.78
1944
180,185.07
14,793.95
16,077.69
1945
151,672.12
10,012.77
4,239.41
1946
43,978.39
18,774.01
5,477.95
1947
15,881.94
9,119.40
2,594.11
1948
19,640.94
5,488.87
1,652.33
The profits of Schmitt Bros. Lumber Company declined after discontinuance of the lumber business in 1946. The ranch was operated at a loss of $4,479.69, $1,407.68 and $6,560.02 in the years 1946, 1947 and 1948. The net rentals from leasing the garage building averaged $2,126.42 per year for the same years. The company was able to show a net income of $9,119.40 and $5,488.87 in 1947 and 1948 primarily as a result of receiving $20,000 each year in the form of installment payments from the sale of the mill property in 1946. At decedent's death, S.H. & W. Lumber Company was an Oregon corporation engaged in the manufacture and sale of lumber. It was incorporated on March 1, 1948. Prior to that time it was operated as a partnership from January 1, 1946 to February 29, 1948. The partnership was formed without any original capital contribution by the partners. *192 As stated above, the partnership purchased its sawmill properties from Schmitt Bros. Lumber Company on a deferred payment contract. When the business was incorporated on March 1, 1948, all of the partnership assets were transferred to the new corporation. At decedent's death, Louis E. Schmitt was one of the managing officers of the S.H. & W. Lumber Company. Thereafter he remained active as vice-president until the liquidation of the corporation in 1954. The stockholders on September 25, 1948, were: Name
Shares
Joseph A. Schmitt (decedent)
249
Louis E. Schmitt
249
O. L. Hogan
249
L. H. Weiss
249
J. N. Walker
4
Total outstanding
1,000
A summary of the balance sheets of the S.H. & W. Lumber Company on March 1, 1948, date of incorporation, and February 28, 1949, at the close of its first year of operations, follows: Assets
1948
1949
Cash
$ 6,748.54
$ 23,321.90
Inventory of lumber and logs
21,193.00
53,867.10
Other current assets
52,965.96
32,061.79
Timber and timberlands
25,342.31
118,283.77
Sawmill and equipment (depreciated)
93,605.06
104,831.80
Total Assets
$199,854.87
$332,366.36
Liabilities
Contract payable - Purchase of sawmill
$ 20,000.00
$ 10,000.00
Other current liabilities
39,054.87
115,422.12
Long term liabilities
40,000.00
30,000.00
Total Liabilities
$ 99,054.87
$155,422.12
Net Worth
Capital stock
$100,000.00
$100,000.00
Surplus
800.00
76,944.24
Total Net Worth
$100,800.00
$176,944.24
Total Liabilities and Net Worth
$199,854.87
$332,366.36
*193 The S.H. & W. Lumber Company was nearing completion of the first year of its operations at the time of decedent's death. During that year, which ended on February 28, 1949, it had gross sales of $399,889.21, gross profit from sales of $283,757.05, and net income of $113,212.62. The company has never paid any dividends. Louis E. Schmitt was not dependent upon decedent and had no liabilities at the time of decedent's death. A summary of his net worth as of October 1, 1948, follows: Cash
$ 6,420.00
Residence
9,500.00
Buick auto
2,000.00
Receivables
2,864.78
549 shares of Schmitt Bros. Lumber
Co.
135,279.09
249 shares S.H. & W. Lumber Co.
35,726.52
Total Net Worth
$191,790.39
In his income tax returns for the years 1946, 1947 and 1948, Louis E. Schmitt reported the following gross income: Income from
S.H. & W.
Salary
Salary
Lumber Co.,
Schmitt Bros.
S.H. & W.
Year
partnership
Lumber Co.
Lumber Co.
Dividends
Gross income
1946
$16,905.48
$5,000.00
None
$21,905.48
1947
12,256.70
5,000.00
None
17,256.70
1948
7,258.21
5,000.00
$4,166.60
None
16,424.81 The net income reported in these returns *194 was $20,426 for 1946, $16,256.70 for 1947, and $15,424.81 for 1948. This income exceeded the customary annual living expenses of Louis E. Schmitt and his wife. His income from the S.H. & W. Lumber Company partnership ceased on March 1, 1948, when the company was incorporated and he became the owner of approximately twenty-five per cent of its stock. Thereafter he received a salary for his services as an officer of the company. The petitioner and its predecessors have been in the business of trust administration since 1890. It was and is qualified to act as trustee and its administration of trusts is carried out in accordance with normally prudent and conservative corporate fiduciary practices. No invasion of the corpus of the trust created by decedent's will has been made for the benefit of Louis E. Schmitt nor has any request been made to the trustee that such an invasion be made. Opinion RAUM, Judge: The issue in this proceeding is not novel. This and other courts have on numerous occasions considered whether provisions of testamentary trusts permitting the invasion of principal rendered the value of charitable remainders so uncertain and unascertainable as to preclude deduction *195 under Section 812(d) of the Internal Revenue Code of 1939 or comparable statutory provisions. Deductions have been disallowed where the powers given in a will to fiduciaries to invade principal were regarded as not fixing a definite standard which would permit a reliable prediction as to the amount that might be diverted from the charitable remainderman, thus precluding the ascertainment of the value of the charitable bequest. Merchants Bank v. Commissioner, 320 U.S. 256; Henslee v. Union Planters Nat. Bank & Trust Co., 335 U.S. 595; Estate of Charles H. Wiggin, 3 T.C. 464; Estate of John W. Holmes, 5 T.C. 1289; Estate of Nathan P. Cutler, Jr., 5 T.C. 1304, affirmed sub nom. Newton Trust Co. v. Commissioner, 160 Fed. (2d) 175 (C.A. 1); De Castro's Estate v. Commissioner, 155 Fed. (2d) 254 (C.A. 2). Deductions have been allowed, however, where the will sets up a definite and fixed standard for the exercise of the trustee's discretion to invade principal, thus making it possible to determine with reasonable accuracy the amount, if any, by which the charitable remainder might be depleted and its *196 value at the time of the decedent's death. Ithaca Trust Co. v. United States, 279 U.S. 151; Blodget v. Delaney, 201 Fed. (2d) 589 (C.A. 1); Lincoln Rochester Trust Co. v. Commissioner, 181 Fed. (2d) 424 (C.A. 2); Berry v. Kuhl, 174 Fed. (2d) 565 (C.A. 7); Estate of Anna Finley Kenny, 11 T.C. 857; Estate of Nellie H. Jennings, 10 T.C. 323; Estate of Edwin E. Jack, 6 T.C. 241; Estate of James M. Schoonmaker, Jr., 6 T.C. 404; Estate of Lucius H. Elmer, 6 T.C. 944; Estate of Horace G. Wetherill, 4 T.C. 678, appeal dismissed, 150 Fed. (2d) 1019 (C.A. 9). In the instant proceeding the decedent's will, after directing the payment to Louis E. Schmitt of the net income of the trust estate during his life in such sums of money from time to time "as he may require", provided that if at any time such net income should in the judgment of the trustee prove insufficient to provide "for his proper maintenance and support, or other necessity" the trustee might "at its sole discretion" invade the capital of the trust estate and pay or apply for the benefit *197 of Louis E. Schmitt such portion thereof as the trustee in its discretion might see fit. The language used convinces us that it was the intention of the decedent to permit the invasion of the corpus of the trust to take care of the life tenant's needs and requirements for necessities and to maintain him according to the standard of living to which he had been accustomed. This constituted a sufficiently fixed and definite standard to permit ascertainment with reasonable certainty of the value, as of the date of decedent's death, of the bequest to the charitable remainderman, in accordance with the Ithaca Trust Co. line of decisions. See also Revenue Ruling 54-285, Internal Revenue Bulletin No. 29, July 19, 1954. [2]
*198 The evidence convinces us that as of the date of decedent's death the likelihood that the corpus would be invaded to provide for the proper maintenance and support, or other necessity, of Louis E. Schmitt, was so remote as to be negligible. On that date he was 69 years and 7 months of age and had a life expectancy of approximately 8 1/2 years. Although he was in frail health, he was active in the operation of both the Schmitt Bros. Lumber Company and the S.H. & W. Lumber Company. His net worth was approximately $190,000. His net income for 1946, 1947 and 1948 exceeded his customary living expenses, and, in view of the salaries that he received from his two corporations, it was reasonable to assume that his income would continue to exceed his expenses even if those corporations maintained the practice of not paying dividends despite the existence of substantial earnings in at least one of them. Our conclusion, based upon the entire record, is that at the time of the decedent's death there was a reasonable certainty, ascertained from a fixed standard capable of measurement, that there would be no invasion of the trust corpus from which the charitable bequest is to be paid. In the circumstances, *199 we hold that the respondent erred in disallowing the charitable deduction claimed in the estate tax return. Decision will be entered for the petitioner. Footnotes
1. Respondent objected to certain stipulated facts which were not known or reasonably foreseeable at the time of decedent's death. Such facts have not been taken into account in reaching the conclusions herein.↩
2. It was stated in Revenue Ruling 54-285, supra, that "a charitable deduction under section 812(d) of the Internal Revenue Code↩ may be allowed on account of bequests or gifts of remainder interests to charity in cases where the will or instrument authorizes invasion of corpus for the comfortable maintenance and support of life beneficiaries if (1) there is an ascertainable standard covering comfort and support which may be either express or implied, and (2) the probability of invasion is remote or the extent of the invasion is calculable in accordance with some ascertainable standard."