174 613¹
174 619⁴

# Frederick M. Crane's Estate. Appeal of Edwin F. Torrey, Executor, and Kate S. T. Barckley, Executrix of Henry M. Seely, Deceased, who was Executor of Frederick M. Crane.

*Will— Trust and trustees—Lunatic's estate.*

Testator by his will left his estate to his executor in trust to provide for the maintenance of his widow out of the income and the principal, if necessary, for her life, with remainder to a nephew. At the date of the will testator s wife was a lunatic, and she has continued permanently insane. Certain property belonging to the widow, which had been in the possession of the testator passed into the hands of the trustee upon the testator's death. The income derived from the trust estate was not sufficient to support the widow in the hospital in which she had been placed during her husband's lifetime. The trustee therefore used some of the income derived from the widow's estate for her support. By this arrangement the trustee was enabled to keep the whole trust estate invested, and obviated the necessity of an immediate and probably a disadvantageous sale of a part of it. A brother-in-law of the widow to whom her property was subsequently transferred, and who afterwards became her committee, consented to the use of the income, but claimed that the money should be returned to her estate. *Held*, (1) that the trustee could not use the widow's separate estate, or the income thereof without her consent, and that he was personally liable for such of it as he had used for her support; (2) that the consent of the widow's brother-in-law to the use of her income had no binding effect on the widow or her representative; (3) that as between the trustee and the trust estate, the money taken from the widow's separate estate was an advancement for a proper purpose, and the trustee being personally liable therefor was entitled to repayment out of the principal of the trust estate.

Argued Feb. 28, 1896. Appeal, No. 216, Jan. T., 1896, by Edwin F. Torrey, executor, and Kate S. T. Barckley, executrix, of Henry M. Seely, deceased, who was executor of Frederick M. Crane, deceased, from decree of O. C. Wayne Co., No. 402, Docket I, sustaining exceptions to an executor's account. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ. Reversed.

Exceptions to executor's account.

The parties agreed upon the following statement of facts.

For the purpose of presenting the exception to this account properly, for the consideration of the court, accountant and exceptant agree as follows:

That Frederick M. Crane died in January, A. D. 1877, leaving a widow, Olivia M. Crane, and a nephew, William J. Tracy (the exceptant), and leaving a last will and testament which was duly admitted to probate, and which contained the following provisions:

"And in order to provide for the support and comfortable maintenance of my dear wife Olivia M., all the rest, residue and remainder of my estate, real, personal and mixed, I do give, devise and bequeath unto Henry M. Seely, Esq., to manage, control, sell, convey, invest and re-invest, according to his discretion, and to hold the same and the products thereof in trust for the following uses and purposes:

"First—To apply so much of the income from said estate, of the principal if necessary, as may be required for the care, maintenance and support of my beloved wife, Olivia M. Crane, so long as she may live, in such manner as in the judgment of said trustee shall be prudent, and for her comfort and best interest. And if she shall recover from her present illness to such an extent that she shall be able to exercise reasonable discretion in her affairs, I request that said trustee will give such consideration to her own wishes as a prudent administration of said estate will in his judgment permit.

"Second—To provide for the decent and proper interment of the remains of my said wife after her decease.

"Third—After the decease of my said wife, I direct that so much of my estate, and the accumulation, if any, thereof, shall be by the said trustee granted, conveyed and paid over to the said William J. Tracy hereinbefore named and mentioned, and with full power to the said Henry M. Seely, trustee, to make and execute any assurances and conveyances necessary and needful for that purpose."

At the time of Mr. Crane's death Mrs. Crane was and has ever since remained insane, and was kept and cared for in the Pennsylvania Hospital in Philadelphia.

It was, in the judgment of the executor and of the exceptant, considered very desirable, and for the best interest and comfort of Mrs. Crane, to continue to have her cared for at the institu-

tion in which Mr. Crane had placed her; and this was believed to be in conformity with his wishes.

The income from Mr. Crane's estate was insufficient to meet the expenses of maintaining Mrs. Crane at the Pennsylvania Hospital; and if no other estate had existed, which might now or ultimately be relied upon for her support, the executor would have been compelled to seek some less expensive institution, in order to guard against the entire exhaustion of the fund, leaving Mrs. Crane in penury. But it was ascertained that Mrs. Crane possessed a separate estate, the income from which, with the income from Mr. Crane's estate, so nearly covered the expenses of maintenance as to remove all danger of her being left without an adequate sum for her maintenance; and it was considered by the executor prudent to continue to maintain Mrs. Crane as she had been maintained at the Pennsylvania Hospital.

No commission of lunacy had ever been issued in the case of Mrs. Crane, and no committee appointed for her; nor had any one any authority over her estate. The securities belonging to her came with her husband's papers into the hands of the accountant, who at first received the income as Mr. Crane had done, and placed it in bank, in the same account with the moneys received from Mr. Crane's estate, identifying the separate funds of Mrs. Crane, however, on his books of account. After a short period, however, accountant turned over the securities belonging to Mrs. Crane, to her brother-in-law, William S. Hassall, of Philadelphia, but desired of Mr. Hassall that he might be permitted to use the income as it was received, in defraying Mrs. Crane's expenses, otherwise accountant would be compelled to keep some part of Mr. Crane's estate uninvested in order to meet these expenses as they accrued, thus reducing the income, and might be forced to an immediate sale of a farm belonging to the estate of Mr. Crane, and thus fail to realize for it such sum as might be obtained if more time could be taken, and sale could be made under more favorable circumstances. Mr. Hassall consented to this, but in doing so insisted that the estate of Mr. Crane would be indebted to the estate of Mrs. Crane for such moneys, and that they must ultimately be returned. Mr. Tracy, the exceptant, had suggested to the accountant that he thought the income from Mrs. Crane's estate

should be held liable to contribute to these expenses, and accountant so informed Mr. Hassall, and said to him that he preferred not to make any agreement, but to leave this legal question of liability to be settled by the courts. Therefore, without any agreement in the matter, Mr. Hassall allowed accountant to use the income from Mrs. Crane's estate to the amount, including what accountant had before received, of $2,631; always insisting, however, that the estate of Mr. Crane should be held liable for it, and should ultimately return it to Mrs. Crane's estate.

This money was used by the accountant in paying Mrs. Crane's expenses, and in order to present the question of liability to the courts, accountant, in an account filed as executor of the last will and testament of F. M. Crane, on the 21st day of September, 1888, stated as an item of charge—"Income from estate of Mrs. Crane received by me, and applied to her support, $2,631.00,"—with an explanatory note as follows:

"Note—I include the last item in this account as executor, because (1) it seems necessary in order to correctly show the balance of moneys in my hands, and (2) in this way only can I avoid passing upon questions which may arise between beneficiaries of the estates of Mr. and Mrs. Crane."

The purpose of this entry was simply to show the fact, for future consideration, that the accountant had received and used these moneys as stated.

For the purpose of bringing before the court the liability of the estate of Mr. Crane to refund these moneys, accountant filed a second account, on the 24th day of October, 1890, asking credit for the said sum of $2,631, in order that it may be refunded to the estate of Mrs. Crane, and to this request the exception is filed.

If, in the opinion of the court, the estate of Mrs. Crane is entitled to a repayment of these moneys, the credit should be allowed. If not, the exception should be sustained.

It is hereby agreed that either party shall have a full right to appeal to the Supreme court, from the disposition by the orphans' court of the above matter, as fully in all respects as though the matter had been heard and disposed of in the usual manner by the court, without any submission filed. This has been the understanding of the parties from the beginning.

The court in an opinion by ARCHBALD, P. J., of the 45th judicial district, specially presiding, sustained the exceptions to the account.

*Error assigned* was decree of the court.

*H. Wilson*, for appellants.—In law, both income and principal of the testator's estate were liable for the widow's maintenance, the manner thereof being left to the executor. Until his estate was exhausted, there was in law no ground for resorting to her estate for her support: Holden v. Strong, 116 N. Y. 471; Hills v. Putman, 152 Mass. 123.

During marriage, the husband is primarily liable for the maintenance of the wife, and is not relieved from this liability by reason of the wife having an estate of her own sufficient for her maintenance: Cleaver v. Scheetz, 70 Pa. 296.

*W. J. Tracy*, for appellee.

OPINION BY MR. JUSTICE FELL, April 6, 1896 :

By his will Frederick M. Crane left his estate in trust for the care and maintenance of his wife during her life. At the date of the will his wife was, and she has since continued to be, an inmate of the department for the insane of the Pennsylvania Hospital. The trustee was directed to apply so much of the income, and of the principal if necessary, as in his judgment was necessary to secure her comfort. Certain securities, the property of Mrs. Crane, which had been in the possession of the testator, passed after his death into the hands of the trustee, who used the income derived therefrom together with that received from the trust estate for her support. In his account the trustee asked credit for $2,361, the amount of income received from the securities of Mrs. Crane and applied to her support. The disallowance of this credit is the subject of the assignments of error.

The income derived from the trust estate was not sufficient to support Mrs. Crane in the hospital in which she had been placed. The use of her separate income enabled the trustee to do this and to keep the whole trust estate invested, and relieved him from the necessity of making an immediate and probably a disadvantageous sale of a part of it. Sometime after the death

of the testator the trustee transferred the possession of Mrs. Crane's securities to her brother-in-law, William S. Hassell, but continued to receive and apply the income as before. Mr. Hassell, who was acting in her interest, but without any authority, as he had not then been appointed the committee of her estate, consented to the use of her income, but insisted that her husband's estate was liable for her support, and that her income used for that purpose should ultimately be returned to her. The residuary legatee under the will of Frederick M. Crane desired the trustee to use Mrs. Crane's income together with that of the trust estate for her support, and thus leave the principal of the trust estate unimpaired. The trustee declined to decide the question raised or to enter into any agreement in relation to it, but as the use of Mrs. Crane's income enabled him without drawing on the principal of the trust estate to support her as she had been supported during her husband's life, and as it was a direct benefit to the trust, he continued to receive and to use her income, leaving the question of legal liability to be determined by the orphans' court upon the audit of his account.

The primary object of the testator was to make a suitable provision for the care and maintenance of his wife. For this purpose he gave his whole estate to the trustee with power to use whatever of income or principal might in his judgment be necessary. The residuary legatee was not to take until after her death, and then only what might remain after her wants had been properly provided for. Having used money derived from other sources for the benefit of the trust and in carrying out its purpose it would seem that the trustee was entitled to the credits asked, unless there was a clear abuse of his discretion. This is not claimed. Mrs. Crane was supported at the same hospital and in the same manner after her husband's death as before. She was not only the principal object of his bounty, but to the extent of her wants the exclusive object of it. The whole estate, principal and income, was devoted to her support, and it was only what might remain after her death that was to go to others. In the exercise of his discretion as to the manner of her support the trustee has incurred expenses in excess of the income of the trust estate, and he asks for reimbursement out of the fund in his possession. He is personally liable to

Mrs. Crane for the amount of her income which he received. Its receipt and use by him were wholly unauthorized. She did not and could not consent to it, and no one was authorized to consent for her. It is not sufficient to relieve him from liability that the money was used for her support. A fund was provided by her husband's will for that purpose, and even were she under no disability she would not be obliged to resort to her own estate until that fund was exhausted. No one could resort to it without her consent.

No effect binding her or her estate now in the hands of her committee can be given to the consent of Mr. Hassell to the use of her income. He had no power to agree for her. At most his consent was that the use should be temporary, and that the money should be returned. The plan was a wise business arrangement by which all interests were promoted, but it had no binding effect upon any one, and it was not the intention of the parties that it should have such an effect. The unauthorized use of her money by the trustee gave rise to a legal obligation on his part to return it, and he became her debtor. As between him and the trust estate it was an advancement for a proper purpose, and he is entitled to repayment.

The assignments of error are sustained, and the order of the orphans' court of May 17, 1894, disallowing the credit item of $2,631 is reversed and set aside.