*Decisions will be entered under Rule 50.*

ESTATE OF BAYARD H. CHRISTY, DECEASED, PEOPLES-PITTSBURGH TRUST COMPANY, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9223. Promulgated April 23, 1947.

*William Wallace Booth, Esq.*, for the petitioner.
*Stanley L. Drexler, Esq.*, for the respondent.

OPINION.

MURDOCK, *Judge*: The Commissioner determined a deficiency of $6,356.88 in estate tax. The only issue for decision is whether the Commissioner erred in failing to allow a deduction of $16,256.14 for a bequest to charity after life estates. The facts have been stipulated.

The decedent died on June 20, 1943, a resident of Pennsylvania. The estate tax return was filed with the collector of internal revenue for the twenty-third district of Pennsylvania.

---

The decedent created a trust on September 18, 1942. A bank was named trustee. Payments were to be made from the trust to the decedent during his life. Pertinent provisions applicable at and after his death are as follows:

3. The Trustee will pay to the estate of the Settlor such sums as the estate shall require to discharge the debts and funeral expenses of the Settlor. The Trustee will upon the death of the Settlor (or, if permitted by law, upon the distribution of the residue of the Trust Estate) pay all inheritance taxes.

4. If, upon the death of the Settlor, either or both of his sisters, ETHEL W. CHRISTY and ABBY F. CHRISTY, both of Sewickley, shall survive him the Trustee will continue to hold and manage the Trust Estate and will pay the net income therefrom together with so much of the principal as shall be necessary to make an annual payment of Four Thousand ($4,000.00) Dollars in moities to the Settlor's said sisters if both survive him, and in totality to the survivor of them so long as she may live. In addition the Trustee, in its discretion, will expend so much of the principal of the Trust Estate (to the extent of the interest of the beneficiary) for the benefit of the Settlor's said sisters, or either of them, as it shall believe necessary or advisable for their comfort and support. The Trustee will continue annually to afford the beneficiary or beneficiaries financial statements, as provided for above.

The deed of trust also provided that "one-fifth of what remains" after his death and the death of his two sisters should be distributed to three named charities, which are charities within section 812(d) of the Internal Revenue Code. The remaining four-fifths were to go to heirs as a class. The trustee was to receive a commission of 5 per cent on income, and on principal distributions during the first five years 2 per cent, during the second five years 3 per cent, and thereafter 5 per cent.

The decedent's two sisters survived him. They were Ethel W. Christy, born December 5, 1875, and Abby F. Christy, born April 10, 1880.

The fair market value of the assets in the trust at the date of decedent's death was $147,090.32, and that amount was reported on the estate tax return as a transfer in trust. $16,256.14, the value on June 20, 1943, of a one-fifth remainder after life estates in the two sisters in a fund of $147,090.32, was deducted on the return, but the Commissioner disallowed the deduction in determining the deficiency. $24,000 from the trust was distributed to the decedent's estate after his death to pay debts and expenses pursuant to paragraph 3 of the deed of trust.

Abby had a personal estate consisting of stocks and bonds which had a value of about $180,000 in 1943. Ethel had a similar estate which had a value of about $174,000 in 1943. They had both been living within their incomes from those estates. The record shows in some detail how they spent their money during the years 1942 to

1945, inclusive. It does not show what the distributable income of the trust was, except for years after the decedent's death, when it amounted to about $4,200 annually.

The question is whether it was sufficiently definite and certain at the decedent's death that the charities would ultimately receive something under this bequest to permit the bequest to be valued and the value allowed as a deduction in computing the estate tax. A number of circumstances might arise under which the corpus of the trust could be invaded for one purpose or another. $24,000 of the total trust fund as it existed at the date of death was later taken pursuant to the terms of paragraph 3 to pay debts and expenses. Those debts and expenses were probably fixed or reasonably ascertainable at death, and the petitioner's claim need not be defeated by any uncertainty as to those amounts. However, no part of the $24,000 could ever go to charity, and due allowance for that would have to be made. That would leave $123,000 of the trust fund available for other purposes pursuant to the deed of trust.

The income from the trust was to be paid to Abby and Ethel until the death of the survivor. The principal was to be used during that period to make up the difference if the annual income ever fell below $4,000. The trust deed also directed the trustee in its discretion to expend so much of the principal of the trust for the benefit of the two sisters as the trustee in its discretion "shall believe necessary or advisable for their comfort and support." The petitioner argues that the probability of the circumstances arising under which the principal of the trust would be invaded for the benefit of the two sisters was so remote that it can be disregarded and a deduction taken for the present value of the right to receive one-fifth of $123,000 at the end of the life expectancies of the two sisters, computed in accordance with mortality tables. The petitioner concedes, however, that the remainder to charity can not be valued satisfactorily for deduction purposes if the likelihood of the circumstances arising can not safely be put aside. See *Ithaca Trust Co.* v. *United States*, 279 U. S. 151, in which the probabilities of invasion were considered remote, and *Merchants National Bank of Boston* v. *Commissioner*, 320 U. S. 256, in which the bequest to charity was held too indefinite and uncertain to be valued and allowed as a deduction.

The possibility that the income of this trust might not amount to $4,000 in every year, thus requiring invasion of the principal, can not be disregarded. The record does not afford any very satisfactory basis for weighing that possibility. There is no showing of how the funds were invested on June 20, 1943, or of the amount or rate of income that those investments were then producing. They would have to produce income of about 3½ per cent to pay the trustees' com-

missions and leave $4,000 annually for the benefit of the two sisters. The actual earnings for 1944 and 1945 were slightly more than $4,000, but obviously there was no great margin of safety, particularly if the possibility of capital loss is also to be considered. On the other hand, the two life beneficiaries were not young and it was improbable that the entire corpus would be used during their lifetimes to assure the payment of $4,000 annually.

The petitioner argues that the standard of living of the two beneficiaries is shown by the record; the income from their separate estates was more than sufficient for their purposes; and the possibility that that income, plus the income of the trust, would be insufficient for their "comfort and support" was too remote to defeat a right to the deduction for the bequest to charity. The record shows the actual expenditures of these two beneficiaries during the years 1942 and 1943, and, if the test is whether the income from their separate property, plus the income from the trust property, might be expected to provide adequately for their comfort and support, then the answer would seem to be that the likelihood of corpus being invaded for this purpose is sufficiently remote that it may be disregarded.

The respondent contends, however, that the income from the separate property of the beneficiaries can not be considered. He argues that the deed of trust, as it would be interpreted by the courts of Pennsylvania, which had jurisdiction in the matter, gave the two sisters during their lives, and their personal representatives thereafter, the right to demand from the trust the entire amount necessary to provide annually for the comfort and support of the two life beneficiaries, even though it was necessary to use corpus for that purpose and even though the necessity for invasion of the principal of the trust might have been obviated by the use of income from their personal estates. It was obvious at the date of the decedent's death that the income from the trust would not provide for the comfort and support of the two beneficiaries in the way in which they had been accustomed to live, and that substantial amounts in addition thereto would be required for that purpose. These additional sums over the lives of these two life beneficiaries could easily consume most, if not all, of the principal of the trust and leave nothing as a remainder for charity or any other purpose. Thus, if the respondent correctly states the law of Pennsylvania, the bequests to charity are too uncertain to form the basis for a deduction. It would not make any difference in this connection whether or not the life beneficiaries or their personal representatives later chose to assert their rights because the deduction is allowed where the benefit to charity derives from a bequest which a decedent has provided for definitely and it does not apply where the benefit to charity is created by the later

action of others, as, for example, life beneficiaries, who do not choose to take what the testator gave them and, therefore, enlarge the fund which is to go to charity. Also the determination must be based upon facts known at the date of death.

It is thus important to determine what the rights of the beneficiaries were under the law of Pennsylvania, which controls those rights. The respondent has cited three decisions to support his contention that under the laws of Pennsylvania corpus could have been invaded, even though the income of the trust, plus the separate income of the beneficiaries, would have been sufficient for their comfort and support. Counsel for the petitioner lightly cast aside this argument and cite no Pennsylvania authorities on the subject. They assume that the principal of the trust can be used only in case the income of the trust, plus the separate income of the two life beneficiaries, is insufficient for their comfort and support. It is immaterial, as stated above, that corpus had never been used or demanded up to the date of the hearing. The value and the definiteness of the bequest to charity must be determined as of the date of death of the decedent, and subsequent events may not be accepted as known facts at that time.

The respondent cites *In re Crane's Estate*, 174 Pa. 613; 34 Atl. 348, to establish the law of Pennsylvania on the subject. Frederick M. Crane, the decedent in that case, left his estate in trust for the care and maintenance of his wife during her life and provided that what might remain thereafter was to go to a residuary legatee. His wife at the date of his death was in a hospital for the insane. The trustee was directed to apply the income and, if necessary the principal, for her comfort. Securities, the separate property of his wife, were in his hands at the date of his death and came into the hands of the trustee after his death. The income from the trust estate was not sufficient to support the widow in the hospital, and the trustee, after using all of the trust income, used some income from the separate property of the widow so as to avoid the necessity of making an immediate and probably a disadvantageous sale of a part of the corpus of the trust. The residuary legatee under the will of the decedent insisted that the trustee use the widow's separate income, together with that of the trust, for her support and thus leave the principal of the trust unimpaired. The widow's brother insisted that the trust estate should be used exclusively for her support and that an amount equivalent to the income from her separate estate which had been used for that purpose should be returned to her. The court pointed out that the whole trust estate, principal and income, was devoted to the support of the wife and it was only what might remain after her death that was to go to others. "A fund was provided by her husband's will for that purpose, and, even were she under

no disability she would not be obligated to resort to her own estate until that fund was exhausted." It held that it was proper to charge the trust estate with an amount sufficient to return to the widow the amount of her separate income which had been used for her support. That case was decided in 1896. See also *Grady's Estate*, 34 D. & C. 143, a 1938 Pennsylvania case. The petitioner has made no effort to show that those cases do not represent the law of Pennsylvania at the time of the death of the present decedent or to explain why they are not a binding authority in the present case. No contrary authorities have been discovered. It thus appears that the respondent's position is well taken and the estate is not entitled to the deduction claimed.

*Decision will be entered under Rule 50.*