ESTATE OF RICHARD F. O'BRIEN, JR., DECEASED, THE OMAHA
NATIONAL BANK, EXECUTOR, PETITIONER *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket No. 733–70. Filed October 5, 1971.

*David E. Pavel*, for the petitioner.
*Leonard A. Hammes*, for the respondent.

DAWSON, *Judge:* Respondent determined a deficiency of $7,673.18 in the estate tax of the petitioner. The question to be decided is whether the petitioner is entitled to a deduction from the gross estate under section 2055(a) of the Internal Revenue Code of 1954,[1] for the decedent's bequest of a remainder interest to six charities upon the termination of a testamentary trust. The answer depends upon the construction of various provisions of O'Brien's will.

### FINDINGS OF FACT

Most of the facts have been stipulated. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference.

The Omaha National Bank, the petitioner in this case, is the executor of the Estate of Richard F. O'Brien, Jr., deceased. Decedent, a bachelor, died testate on September 19, 1967. Decedent's will, dated May 6, 1966, was submitted to probate on October 30, 1967. On December 18, 1968, petitioner filed a Federal estate tax return with the district director at Omaha, Nebr. The tax shown on that return, $3,709.21, has been paid. The value of the total gross estate of decedent was $139,393.74.

Paragraphs First through Fourteenth of decedent's will concern specific bequests to the relatives of decedent and the sum of $500 which was to be used as an offering for masses.

Paragraph Seventeenth of the will provides for the creation of a testamentary trust. The paragraph reads as follows:

SEVENTEENTH—I give to THE OMAHA NATIONAL BANK, and any substitute Trustee, all of the rest, residue and remainder of my estate. The Trustee shall hold, expend and distribute the income and principal of the trust estate as follows:

I—While my sister, HELEN McCARTHY, is under the age of 75 years, the Trustee shall pay to her, or to her legal guardian, the sum of $100.00 per month.

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

After my said sister reaches age 75, the Trustee shall pay her or her legal guardian the sum of $150.00 per month for as long as she lives.

II—While my brother, WILLIAM T. O'BRIEN, is under the age of 70 years my Trustee shall pay to him, or to his legal guardian, the sum of $100.00 per month. After my said brother reaches 70 years of age, the Trustee shall pay him or his legal guardian, the sum of $150.00 per month for as long as he lives. In addition to the foregoing payments provided for in this paragraph, my brother, WILLIAM T. O'BRIEN, and his wife, JUNE O'BRIEN, shall have the right to live in the downstairs apartment in the premises which I own at 4930 Davenport Street, Omaha, Nebraska, rent free, as long as either of them live and occupy same. Said parties are to pay the utility bills and insurance on the premises. The other income from said premises shall be paid to the Trustee and the Trustee shall pay the taxes and other necessary expenses to maintain the premises.

III—While my friend, EILEEN CARROLL, is under the age of 70 years, my Trustee shall pay to her or to her legal guardian, the sum of $50.00 per month. After EILEEN CARROLL reaches age 70, the Trustee shall pay her or her legal guardian, the sum of $100.00 per month as long as she lives.

IV—This trust shall terminate upon the death of the last member of the group composed of HELEN McCARTHY, WILLIAM T. O'BRIEN, JUNE O'BRIEN and EILEEN CARROLL. The Trustee shall distribute the remaining assets in equal parts to ST. BENEDICT'S CHURCH OF OMAHA, NEBRASKA, ST. JAMES ORPHANAGE, Omaha, Nebraska, ST. CECELIA'S CATHEDRAL, CREIGHTON PREPARATORY SCHOOL, ST. VINCENT DePAUL SOCIETY, Omaha, Nebraska, and THE SOCIETY FOR THE PROPOGATION OF THE FAITH.

V—The Trustee shall administer and distribute the Trust assets in accordance with the TRUSTEE PROVISIONS hereof.

Added to and forming a part of the will are three pages of "Trustee Provisions" and approximately two pages of "Executor Provisions." These provisions are standard form administrative provisions. Paragraph III of the "Trustee Provisions"—the interpretation of which is at issue—reads as follows:

If, at the time stated for the distribution of assets to a beneficiary, such beneficiary is incompetent to receipt for same except through a legal guardian, the Trustee, in its discretion, may continue to hold such assets in trust for such beneficiary. The Trustee may expend and apply for the care, education, support and welfare of such beneficiary such amounts of the income and principal thereof as the Trustee deems advisable. Upon (1) the termination of such incompetency, (2) the death of such beneficiary, or (3) at the expiration of the time when it is lawful to continue the trust under any applicable rule against perpetuities or other rule of law, whichever occurs first, the assets so held shall be distributed to such beneficiary or, if deceased, to his or her estate.

The value of the residuary estate available, as of the date of decedent's death, for distribution to the trust provided for in paragraph Seventeenth was $87,637.33 (before deduction for Federal estate tax liability).

All of the persons referred to in paragraph Seventeenth were living at the time of decedent's death. Each person's name, date of birth, age

nearest birthday, and life expectancy as of the date of decedent's death are listed below:

| Name | Date of birth | Age | Life expectancy (years) |
|---|---|---|---|
| Helen McCarthy | Sept. 8, 1896 | 71 | 9. 63 |
| William T. O'Brien | Aug. 5, 1911 | 56 | 18. 97 |
| June O'Brien | June 8, 1913 | 54 | 20. 47 |
| Eileen Carroll | Oct. 4, 1899 | 68 | 11. 17 |

The present value, as of the date of decedent's death, of the monthly annuity set forth in subparagraph I of paragraph Seventeenth for the lifetime benefit of Helen McCarthy is $11,692.62. The present value, as of the date of decedent's death, of the monthly annuity set forth in subparagraph II of paragraph Seventeenth for the lifetime benefit of William T. O'Brien is $17,549.82. The present value, as of the date of decedent's death, of the right of William T. O'Brien and June O'Brien to live in the downstairs apartment rent free, for life, pursuant to subparagraph II of paragraph Seventeenth is $3,364.80. The present value, as of the date of decedent's death, of the monthly annuity set forth in subparagraph III of paragraph Seventeenth for the lifetime benefit of Eileen Carroll is $9,252.51.

Added together, the above present values amount to $41,859.75. When this total, $41,859.75, is subtracted from the value of the residuary estate as stated above, $87,637.33, the amount of the disputed charitable remainder, before deduction of Federal estate taxes remains. That amount is $45,777.58.

Paragraph III of Trustee Provisions is not applicable to the will to which it was added. It does not authorize any invasion of the principal of the trust corpus not made available to the beneficiaries during the continuance of the trust. And it follows that it does not make the charitable remainder interest presently unascertainable or the possibility of invasion less than remote.

OPINION

Decedent O'Brien created a testamentary trust and bequeathed remainder interests in the trust to six charitable organizations. His estate claimed deductions for the charitable bequests. Respondent disallowed the deductions because "it was not ascertainable at the date of death of the testator how much, if any, of the bequests would be received by the charitable organizations." The issue, then, is whether the value of the bequests was "presently ascertainable" as of the date of

decedent's death, sec. 20.2055-2(a), Estate Tax Regs.,[2] and whether "the possibility that the charitable transfer will not become effective is so remote as to be negligible," sec. 20.2055-2(b), Estate Tax Regs.[3]

At trial, the petitioner offered the testimony of two lawyers, who drafted portions of the will, and a trust officer as to their understanding of the meaning of certain provisions of the document. Respondent objected—and was granted a continuing objection—on the ground that the oral testimony violated the parol evidence rule, citing Wigmore, Evidence, par. 2471 (3d ed. 1940). We overruled the objection and declared the testimony admissible. See *Estate of Leon Holtz*, 38 T.C. 37, 41 (1962), where we stated:

It is well established in this Court that the parol evidence rule cannot be invoked by a third party, not a party to the written instrument involved, *Haverty Realty & Investment Co.*, 3 T.C. 161 (1944), and cases cited therein; *Sarah Helen Harrison*, 17 T.C. 1350 (1952) ; and, furthermore, one of the exceptions to the parol evidence rule is that parol evidence may be received not to contradict or vary terms of the written contract but to explain how it is to be carried out. *American Crystal Sugar Co.* v. *Nicholas*, 124 F. 2d 477 (C.A. 10, 1941).

To this we add what the Court of Appeals said in *Landa* v. *Commissioner*, 206 F.2d 431, 432 (C.A.D.C. 1953) :

Generally, "[i]n the field of taxation, administrators of the laws, and the courts, are concerned with substance and realities, and formal written documents are not rigidly binding." [*Helvering* v. *F. & R. Lazarus & Co.*, 308 U.S. 252, 255 (1939).] The taxpayer as well as the Commissioner of Internal Revenue is entitled to the benefit of this rule. Moreover, the oral testimony here was not barred by the parol evidence rule, since the Commissioner "was not a party or privy of a party to [the] written agreement[s]." [*Scofield, Collector of Internal Revenue* v. *Greer*, 185 F.2d 551, 552 (C.A. 5, 1950).]

---

[2] Sec. 20.2055-2. Transfers not exclusively for charitable purposes.

(a) *Remainders and similar interests.* If a trust is created or property is transferred for both a charitable and a private purpose, deduction may be taken of the value of the charitable beneficial interest only insofar as that interest is presently ascertainable, and hence severable from the noncharitable interest. The present value of a remainder or other deferred payment to be made for a charitable purpose is to be determined in accordance with the rules stated in § 20.2031-7. Thus, if money or property is placed in trust to pay the income to an individual during his life, or for a term of years, and then to pay the principal to a charitable organization, the present value of the remainder is deductible.

[3](b) *Transfers subject to a condition, or a power.* If, as of the date of a decedent's death, a transfer for charitable purposes is dependent upon the performance of some act or the happening of a precedent event in order that it might become effective, no deduction is allowable unless the possibility that the charitable transfer will not become effective is so remote as to be negligible. If an estate or interest has passed to or is vested in charity at the time of a decedent's death and the estate or interest would be defeated by the performance of some act or the happening of some event, the occurrence of which appeared to have been highly improbable at the time of the decedent's death, the deduction is allowable. If the legatee, devisee, donee, or trustee is empowered to divert the property or fund, in whole or in part, to a use or purpose which would have rendered it, to the extent that it is subject to such power, not deductible had it been directly so bequeathed, devised, or given by the decedent, the deduction will be limited to that portion, if any, of the property or fund which is exempt from an exercise of the power.

The Tax Reform Act of 1969 made important changes in this area of the Internal Revenue Code. Sec. 2055(e), as amended by the Tax Reform Act of 1969, sec. 201(d)(1).

See *S. E. Brown*, 52 T.C. 50, 59–60 (1969); *Sarah Helen Harrison*, 17 T.C. 1350, 1357 (1952).

Addressing the substance of this controversy, respondent contends that paragraph III of "Trustee Provisions," which is set forth in our Findings of Fact, authorizes the trustee to invade the corpus of the testamentary trust. Specifically, he argues that the second sentence of paragraph III authorizes the trustee, in the event any of the life beneficiaries becomes incompetent, to expend for the care, education, support and welfare of such beneficiary such amounts as the trustee deems advisable and that "such amounts" can be drawn not only from the amounts set aside in subparagraphs I through III as monthly payments but also, if these amounts are insufficient, from the corpus of the trust. If respondent's interpretation is correct, the possibility of invasion prevents the charitable remainders from being "presently ascertainable" and makes the possibility that the charitable transfer will not become effective less than remote. *Estate of Bayard H. Cristy*, 8 T.C. 862 (1947); *Estate of Eunice M. Greene*, 11 T.C. 205 (1948).

Petitioner contends that the trustee can only pay to the life beneficiaries the amounts specified in paragraph Seventeenth, which is also set forth in our Findings of Fact, and that in no instance is the trustee authorized to invade the corpus of the trust.

We agree with the petitioner that paragraph III of the Trustee Provisions does not authorize the trustee to invade the trust corpus. We have reached this conclusion after reading the will, including the Trustee Provisions and the Executor Provisions, as a whole and attaching to its language the commonly accepted literal and grammatical meanings. We have not had to rely upon the testimony of petitioner's three witnesses; yet we have listened to it and found it helpful.

Paragraph III is restricted in application. It can be utilized by the trustee only if, at the time stated for distribution of assets to a beneficiary, such beneficiary is incompetent. The words "distribution of assets" can refer only to assets which the trustee is directed to distribute to a beneficiary. The trustee is so directed in only two instances, both in paragraph Seventeenth of the will. First, the trustee is directed to distribute to individual beneficiaries the monthly amounts specified in subparagraphs I through III of paragraph Seventeenth. Second, the trustee is directed to distribute the remainder of the trust to the six charities. If the words "distribution of assets" refers to the specified monthly payments, paragraph III of the trustee Provisions is still restricted to those "assets" and cannot be expanded to include the corpus of the trust. The second sentence of paragraph III, because of the location of the sentence and the inclusion of the word

32

"thereof," does not authorize the trustee to invade beyond "such assets." If, on the other hand, the words "distribution of assets" refers to the final distribution of assets to the remainder beneficiaries, as we think it does, then paragraph III of the Trustee Provisions does not have any application because the distributions are distributions to organizations and organizations cannot become legally incompetent.

With regard to our belief that paragraph III is inapplicable, we note that the Trustee and Executor Provisions were standard form administrative provisions which decedent's law firm used in virtually every will which it prepared. We also note that many of the provisions have no application to this will. For example, in the Trustee Provisions, in paragraph I, references to "minor beneficiary" and "parent" are inapplicable. Other trustee provisions which do not have application to this will are: Paragraph V regarding the power to subdivide and improve real property and to lease personal property; paragraph VII regarding references to carrying on a business or becoming a general or limited partner; and paragraph VIII regarding participation in any consolidation, merger, reorganization, liquidation or incorporation. Likewise, many of the provisions contained in the Executor Provisions have no application.

Because of our conclusion that paragraph III does not authorize invasion of the trust corpus, we find cases such as *Estate of Bayard H. Christy, supra,* and *Estate of Eunice M. Greene, supra,* to be inapposite. Furthermore, the fact that more than one life beneficiary is involved in this case presents no problem. See Rev. Rul. 68–270, 1968–1 C.B. 407. Accordingly, we hold that the claimed charitable deduction is ascertainable by actuarial computations set forth in our Findings of Fact and should be allowed under the provisions of section 2055(a) and the applicable regulations.

*Decision will be entered under Rule 50.*