**Langdon Trust**

*Hampson & Hampson,* for petitioner.

WOLFE, P. J., March 2, 1972.—We are called upon here by Warren National Bank, trustee under the last will and testament of Frances P. Langdon, to approve disbursements made by it to the life tenant under the testamentary provision of decedent's will and to pass upon the desirability of paying current obligations of the life tenant and to give the trustee some guidance as to the amount of future monthly payments to the life tenant.

To date, there has been no filing, audit or confirmation of decedent's estate by the trustee in that capacity; however, the trustee in its capacity as executor has filed an account which was confirmed in order to perfect the trust provisions.

In the absence of any dispute, it is well settled by now a judgment declaratory in nature or an advisory opinion will not ordinarily be granted at the audit of an account or otherwise; however, if all parties in interest are before the court and the questions involved are fully discussed, a declaration to guide the future conduct of the fiduciary may properly be made. See Girard's Estate, 49 D. & C. 217, 229, wherein it was held:

"Ordinarily upon the audit of account, the Court will determine only such questions as are involved in making awards. We refuse to determine questions designed to obtain an adjudication of an advisory nature."

Also, as held in Arrott's Estate, 36 D. & C. 546, while an advisory opinion is ordinarily not desirable at the audit of a decedent's estate, if all parties involved are before the court and the questions involved are fully discussed, a declaration to guide the future conduct of the trustee can safely be made. See also Pennsylvania Orphans' Court Practice, Vol. 6, pp. 12 and 13.

The reluctance of the court to interfere or accept jurisdiction involving matters within the sole discretion of the trustee is apparent. Testators necessarily have confidence in their trustee to properly administrate their intent and the courts should be slow to structure the trustee's administration of the estate assets.

"In the absence of manifest abuse, the Orphans' Court will not interfere with the exercise of discretionary rights, powers and duties conferred by the trust instrument upon trustees, and where a trustee or substitute trustee has an absolute discretion to exercise, the court will not regulate the exercise of that absolute discretion by either authorizing or approving the extent to which it is exercised": Pennsylvania Orphans' Court Practice, Vol. 5, Fiduciaries, p. 102 and cases therein cited.

This does not mean, however, that the trustee is not subject to use reasonable judgment and where the language used in the trust is of such a general nature that the trustee may subject itself to surcharges by the remaindermen, we think the courts owe some duty to guide the trustee in its application of the trust funds.

For this reason this court accepts jurisdiction of the matter submitted notwithstanding the remaindermen are not before the court; however, the within opinion will be made nisi and absolute only after service thereof is made upon the remaindermen and they are given an opportunity to file any exceptions thereto.

The trust provision which gives the trustee concern is as follows:

(a) "The Trustee shall pay the net income to my daughter, JoAnn Glackin, in quarterly installments, for and during the term of her natural life. In addition, my Trustee is authorized, in its sole and absolute discretion, to pay to my daughter, from time to time, such portions of the principal, even to the exhaustion thereof, as my Trustee may, in its sole and absolute discretion, deem appropriate to provide for her medical, surgical and nursing care, and also proper support and maintenance."

(b) "Upon the death of my daughter, JoAnn L. Glackin, the Trustee shall pay and distribute, the then remaining principal and income, in equal shares, to the children of the said JoAnn L. Glackin. Should any of these children being my grandchildren, be under age, I nominate, constitute and appoint Warren National Bank to be Guardian of the estate of each of said children during minority."

The trustee recognizes that consideration must be given to both provisions of the will quoted therein but is alarmed that the current demands made upon it by the life tenant will deplete the entire trust during her lifetime, leaving no balance for distribution to the remaindermen.

After hearing with the life tenant present, it was established that she is a divorcee and has three children of the ages of 19, 18, and 8. The oldest child is currently attending college and the second child ex-

pects to enter college next year. The three remaindermen reside with their father who has current custody of them following the parties' divorce five years ago. According to the trustee, no question has been raised by the remaindermen concerning its conduct in making distributions to the life tenant; however, prior distributions have been about equal to the earned income and the invasion of principal has been slight.

The trust did not take effect until the demise of testatrix' spouse, who, during his lifetime paid his daughter $500 a month for her maintenance and support at which time she was not employed. The testimony established he was aware of his wife's trust provision for their daughter and his estate contributed $10,000 to $20,000 to it.

The evidence established the beneficiary is employable at this time, although currently unemployed and has had two years of college education.

The corpus of the trust consists of assets aggregating $85,362.83 at the time the petition was filed, yielding an annual income of approximately $3,825.00, leaving net for distribution, after administration expenses, of approximately $3,600.

Payment under the trust for the current year, to date, is $7,510.98 and additional demands are being made upon the trustee to pay outstanding obligations of $703, which the beneficiary alleges she is unable to pay.

The trustee expresses the view, although the beneficiary has no bent on depleting the corpus of the trust to defeat the remaindermen, she is, however, a poor business manager and is unnecessarily incurring expenses by the purchase of a home on a land sale contract, which it has advised her to sell and obtain more modest living quarters in relation to her personal needs. Also, the trustee is concerned that through the

beneficiary's poor judgment designing persons have taken advantage of her.

The beneficiary expressed a view she requires at least $400 to $450 currently per month to sustain herself since she is unemployed. She has made arrangements to sell her home and intends to return to Florida to be closer to her children after the sale is consummated. She estimates that her current outstanding obligations now amount to $1,500.

One of the oldest, and apparently the leading case on this entire question is Tyson's Estate, 191 Pa. 218 (1899). In that case, the court recognized it had no jurisdiction to declare the construction of a will and rights under it by way of advice in limine without the adverse litigants actually before them. In a well-reasoned opinion, the court spelled out this practice would be contrary to the whole fundamental theory of the law under which courts are not to advise but to decide. Nonetheless, the court there accepted jurisdiction of the question presented under the guise that the petitioner was not asking for a construction of the will in advance by way of advice, but rather, the assistance of the court to obtain what petitioner claimed as the property of the testator. Tyson's Estate holds the cardinal rule is to find the intent of the testator and the power of the life tenant to consume the corpus, though unrestricted, is not a rule of law, but a rule of construction in aid in reaching the intent of the testator, and where a different intent is manifest from the four corners of the will, the rule cannot be applied to defeat it. Thus, a beneficiary will not be permitted to make use of mere forms of words to defeat or evade the intent of the testator and a beneficiary who has not used or consumed the corpus during life will not be permitted to give it away to persons other than

those designated by the testator. With this in mind, and looking at the entire language of the two paragraphs, which control the intent of the testatrix in the instant case, it becomes apparent testatrix' dominant intent was to provide for her daughter's maintenance and support by paying to her the net income annually in quarterly installments for her entire life. It is equally apparent, testatrix had in mind to provide for the proper support and maintenance of her daughter by use of the principal as the trustee may decide is appropriate. There is no limitation on the trustee in this respect in relation to the time of payment. The language used in reference to the principal is, "from time to time, such portions of the principal . . . as my Trustee may . . . deem appropriate to provide for her medical, surgical and nursing care, and also proper support and maintenance."

It seems clear, testatrix contemplated under normal circumstances and without any emergency befalling her daughter that there would be remaining principal left to distribute to her grandchildren upon the demise of the life tenant. In short, testatrix, in the court's opinion, did not grant a license to the trustee to deplete the principal upon the demands of the life tenant but, on the contrary, intended the comfortable support of her daughter with a balance of principal for distribution to the remaindermen provided the principal earned sufficient to properly support and maintain the life tenant. If otherwise, the trustee would have the sole prerogative to invade the principal for the care and maintenance of the life tenant.

Any other interpretation in the court's opinion, would be a sheer warping of the intent and certainly useless act on the part of testatrix in inserting paragraph B of the trust.

Tyson's Estate was followed in Rumsey's Estate, 287 Pa. 448 (1926), interpreting a testamentary disposition which provided, inter alia,

" 'I give to my wife, all my property, real or personal, for the full term of her lifetime, she to have the entire income therefrom, and also as much as the principal as she desires for her support and comfort. And my said wife shall not be required to file any bond or inventory, or to make any report or accounting to any court, person or interest. And in the management of the estate she is authorized and empowered to sell, buy, transfer to herself or to others, and do any other thing she desires and finds necessary or convenient.' "

The will then provided certain bequests of the balance of the residue to decedent's heirs at law.

The language was interpreted as giving testator's wife the income of his entire estate for life and so much of the principal as she desired for her support and comfort, with power of sale, transfer, consumption and reinvestment in her own name:

"So long as she acted in good faith there was no limit to her right to use the estate for her support and comfort. In the language of Mr. Justice Kephart, speaking for the Superior Court in Zumbro vs Zumbro, 69 Pa. Super. Ct. 600, 603; 'In appropriating the estate as directed, she must act honestly and fairly. Her comfort may embrace a variety of things. It is not limited solely to the necessities of life, but may include things which may bring ease, contentment or enjoyment. It is sometimes difficult to say under what circumstances expenditures may be made through such authority and be considered within the purport of the will . . . Generally it may be said that as long as she does not deplete the estate for the mere purpose of defeating the testator's intention, or preferring certain heirs or beneficiaries, courts will be slow to condemn

expenditures as being contrary to the power lodged in the widow.' "

Rumsey's Estate was followed in Criswell Trust, Fidu. Rep. Vol. 12, p. 486, interpreting similar language in a trust provision to the case under consideration. In Criswell, the life tenant had the absolute power to invade the principal of the trust for her own use as she feels her need for such arises. Upon the termination of the life estate any income remaining from the trust was to be added to the principal thereof and go into a trust for the term of another life and upon termination of the second life to a remaining charity. There, the court held the life tenant, widow of testator, had the right to invade the principal of the trust for her own use, so long as she acts in good faith and acts honestly and fairly.

In Gibson's Appeal, 25 Pa. 191, it was held the life tenant of such trust language is entitled to an amount to be measured by the reasonable cost of her living, irrespective of what she may receive from other sources. She need not revert to the charity of others, nor is the payment to her to be regarded merely as a supplement to her own industry.

In Duffy Trust, 6 Fid. Rep. 303 (1956), it was held, however, when the settlor of a testamentary trust created a trust providing for the "comfort and support" of the beneficiaries and gave the trustee sole authority to determine the necessity of any expenditure from principal, the trustee properly exercised its discretion in considering other sources of income of each beneficiary and making unequal allowances from principal.

The good faith principle was recited in Lichtenwalner Estate, 16 Fidu. Rep. 206 (1964), and again in Dziak Estate, 47 D. & C. 2d 523 (1969), following Demitz Estate, 417 Pa. 316: "Where a Trustee has been given a discretionary power to invade principal,

the general rule is that the existence of an independent estate by a wife is not sufficient justification for a trustee's refusal to pay principal for her maintenance and support".

Also, see Crane Estate, 174 Pa. 613; Stuckey's Estate, 40 D. & C. 2d 436, 16 Fidu. Rep. 500; Short Estate, 6 D. & C. 2d 444, 6 Fidu. Rep. 538, all holding an independent income in and by itself is not reason to withhold principal from a life tenant but rather all circumstances must be taken into consideration.

Finally in Lysinger Estate, 35 D. & C. 2d 443 (1964), trust language very similar to the language under consideration providing net income to testator's son for life and upon his death to distribute so much of the accumulated income and principal therefrom unto his issue, then living, per stirpes, the court held there was nothing in this language to indicate an intention that the life beneficiary was to use his parents' estate for his complete care and maintenance. "Furthermore, such an interpretation must be rejected in the light of the relatively small corpus, the relatively long expectancy of the beneficiary as of the time of his parents' deaths, the fact that provisions were made for last illness, grave marker and funeral, the fact that a trust rather than an outright gift was provided for, the fact that both parents inserted spendthrift clauses in their wills and the fact that petitioner had apparently worked regularly while his parents were alive and paid his own expenses other than the bare essential living expenses." The court concluded the life tenant was not to look to the estate for his complete care and maintenance and the trustee properly considered the life tenant's earned income in refusing requests for additional living expenses.

We conclude, therefore, the trustee in the instant case must consider the employability of the life tenant,

the amount her father paid her during his lifetime per month when she was not employed, the secondary intent of testatrix to provide for her grandchildren under normal circumstances and the language used is not a license to deplete the trust, that the prior expenditures from principal by the trustee have been proper and the current expenses incurred by the life tenant are proper and subject to payment. The evidence establishes the requirements of the life tenant are not based upon luxury and her request for $400 to $450 is reasonable considering her current status in society. The life tenant must, in good faith, make diligent efforts to seek employment to supplement her income from the trust.

For the foregoing reasons we make the following

## ORDER

And now, to wit, this March 2, 1972, Warren National Bank, as trustee, is authorized and directed to pay the current outstanding obligations of the life tenant of $703 by distribution to the life tenant and the creditors; the prior distributions made by the trustee of $7,510.98 are authorized and confirmed. In addition, any other outstanding current indebtedness may be paid by the trustee if ordinarily and necessarily incurred for the personal use of the beneficiary.

Thereafter, the trustee shall pay the net income to the life beneficiary in quarterly installments. In addition thereto, the trustee is authorized to invade the principal of the trust for the proper support and maintenance of the life tenant in an amount that will, after added to the aforesaid income, constitute a maximum of $450 per month payment to the life tenant until such time the life tenant becomes employed. Thereafter, the trustee shall pay the income only to the beneficiary unless there is evidence that the

life tenant has incurred extraordinary living expenses and is in need of additional funds necessitating invasion of the corpus.

The trustee, may, within its sole discretion, pay any amount from the principal from time to time for extraordinary medical, surgical or nursing care.

The within order is nisi and the trustee shall serve the guardian of the remaindermen with a copy of the within opinion and order; and unless exceptions are taken thereto within 30 days by the remaindermen. from the date of service, the within order shall become absolute.